

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0100-15 & NO. PD-0101-15

### OSMIN PERAZA, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

**RICHARDSON, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

We granted the State's Petition For Discretionary Review to address whether the First

Court of Appeals correctly determined that a cost of court "Related to DNA Testing,"

assessed pursuant to Texas Code of Criminal Procedure, Article 102.020, is an

unconstitutional tax that violates the separation of powers clause under the Texas

Constitution.[1]  We hold that Article 102.020 is not facially unconstitutional, and we therefore reverse the decision of the First Court of Appeals.

## BACKGROUND

### *"Houston, We Have A Problem"*

Osmin Peraza was indicted in Harris County under separate cause numbers for two instances of aggravated sexual assault of a child under the age of fourteen.[2]  After Peraza pled guilty to the two offenses, the trial court assessed punishment in the amount of twenty-five years for each offense, to run concurrently.  Each judgment contained a court cost assessment of $250 for a "DNA RECORD FEE."  This DNA record fee is required to be assessed as a cost of court pursuant to Texas Code of Criminal Procedure, Article 102.020, entitled "Costs Related to DNA Testing."  Article 102.020(a) provides that "[a] person shall pay as a cost of court: (1) $250 on conviction of an offense listed in Section 411.1471(a)(1), Government Code."[3]  Article 102.020(h) directs that "[t]he comptroller shall deposit 35 percent of the funds received under this article in the state treasury to the credit of the state

---

[1] Our review is limited to the issue of whether the First Court of Appeals correctly held that Article 102.020 is facially unconstitutional. An "as applied" constitutional challenge has not been raised.

[2] TEX. PENAL CODE ANN. § 22.021 (West Supp. 2014).

[3] TEX. CODE CRIM. PROC. ANN. art. 102.020(a)(1) (West Supp. 2014).

highway fund and 65 percent of the funds received under this article to the credit of the criminal justice planning account in the general revenue fund."[4]

On appeal, Peraza challenged the assessment of this DNA record fee, claiming it was an unconstitutional tax that violated the separation of powers clause of the Texas Constitution.[5] This argument was based on the language in Article 102.020(h) directing how such court costs are to be disbursed. In other words, argued Peraza, by requiring the courts to impose this "tax" for the benefit of the state highway fund and the criminal justice planning account, the Legislature had reduced the courts to a tax-gathering agency of the executive branch, which would be in violation of the separation of powers doctrine.

The majority panel of Houston's First Court of Appeals agreed with Peraza that the statute was facially unconstitutional, and on December 30, 2014, the First Court issued its opinion modifying both judgments to delete the $250 DNA record fee. *Peraza v. State,* 457 S.W.3d 134 (Tex. App.—Houston [1st Dist.] 2015). Relying on *Ex Parte Carson*, 159

---

[4] TEX. CODE CRIM. PROC. ANN. art. 102.020(h) (West Supp. 2014).

[5] **§ 1. Division of powers; three separate departments; exercise of power properly attached to other departments**. Sec. 1. The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted. TEX. CONST. art. II, § 1(West 2007). The Texas separation of powers provision is generally susceptible to violation in one of two ways: (1) when one branch of government assumes or is delegated a power "more properly attached" to another branch, or (2) when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers. *Ex Parte Lo*, 424 S.W.3d 10, 28 (Tex. Crim. App. 2013) (quoting *Ex parte Gill*, 413 S.W.3d 425, 431-32 (Tex. Crim. App. 2013)).

S.W.2d 126 (Tex. Crim. 1942), the First Court held that the DNA Record Fee collected pursuant to Article 102.020 was an unconstitutional tax, not a legitimate court cost, because it was neither necessary nor incidental to the trial of a criminal case. *Peraza*, 457 S.W.3d at 149.

Six months before the First Court of Appeals issued its opinion in *Peraza*, Houston's Fourteenth Court of Appeals issued a contrary unanimous panel opinion in *O'Bannon v. State*, 435 S.W.3d 378 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Like Peraza, Bennett Keith O'Bannon challenged the assessment of the court costs related to DNA testing, pursuant to Article 102.020, as facially unconstitutional as a matter of law. O'Bannon asserted the same argument raised by Peraza—that Article 102.020 impermissibly compels the courts to collect a tax in violation of separation of powers principles. The Fourteenth Court held that O'Bannon failed to satisfy his burden to show that Article 102.020 was invalid in all possible applications and thus affirmed the trial court's overruling of his facial challenge to the statute. *O'Bannon v. State*, 435 S.W.3d at 382. Neither the State nor O'Bannon filed a petition for discretionary review, so this Court did not have an opportunity to examine the Fourteenth Court's opinion.

Because of these conflicting opinions decided by the two appellate courts in Houston, we granted review to examine the facial constitutionality of Article 102.020.[6]

---

[6] Another case out of the Fourteenth Court of Appeals involved the constitutionality of a different court cost statute. In *Salinas v. State,* No. PD-0419-14, ___ S.W.3d ____ (Tex. Crim. App.

# ANALYSIS

## *"The Right Stuff"—The Constitutionality of Article 102.020*

A.     Arguments of the Parties

Peraza argues that the First Court correctly held that Article 102.020 is facially

unconstitutional under the separation of powers clause of the Texas Constitution because the

"DNA RECORD FEE" is an impermissible tax collected by the judiciary, rather than a

legitimate court cost. This argument is based upon the assertion that revenue from this fee

---

July 1, 2015), appellant, Orlando Salinas, was convicted of causing injury to an elderly individual and was assessed a sentence of five years in prison. After sentencing appellant, the trial court assessed a consolidated court cost of $133 pursuant to Texas Local Government Code, Section 133.102. Appellant argued on appeal that the consolidated court cost is a tax and therefore unconstitutional. The Fourteenth Court held that Section 133.102 was not facially unconstitutional under the separation of powers clause of the Texas Constitution. The Fourteenth Court's conclusion was based upon two reasons. First, Salinas "failed to satisfy his burden to show that the statute is invalid in all possible applications because he has not established what the funds designated in Section 133.102(e) actually do." *Salinas v. State,* 426 S.W.3d 318, 327 (Tex.App.–Houston [14th Dist.] 2014). Second, Salinas failed "to address severability principles when he argue[d] that the consolidated court cost amounts to an impermissible 'tax' because it is 'primarily used to fund non-court programs.'" *Id.* We granted review in *Salinas* to determine whether the Fourteenth Court's decision was erroneous in light of clear precedent from this Court in reviewing facial challenges to the constitutionality of a statute. We determined that the Fourteenth Court addressed Salinas' arguments under an incorrect standard when it required Salinas to also address severability principles and to establish what the funds designated in Section 133.102 actually do. By requiring Salinas to show what the funds actually do, the Fourteenth Court asked for something neither permitted nor required in a facial challenge. We therefore reversed the judgment of the Fourteenth Court in *Salinas* and remanded that case so that the court of appeals could address the facial constitutionality of Section 133.102 by examining whether Salinas met his burden of proving that the statute cannot operate constitutionally under any circumstance. The Fourteenth Court and the First Court approach the issue of the constitutionality of court costs differently. As explained herein, neither appellate court has properly applied the correct standard for reviewing facial constitutional challenges. The difference between our decision in this case (to reverse and render) and our decision in *Salinas* (to reverse and remand), is that, in this case, the First Court cited the correct standard, but incorrectly applied it. In *Salinas*, the Fourteenth Court applied the wrong standard.

is dedicated to the state highway fund and criminal justice planning account, and thus used for services that are neither necessary nor incidental to the trial of a criminal case.

In support of his argument, Peraza relies, as the First Court did, on *Ex Parte Carson*, 159 S.W.2d 126 (Tex. Crim. 1942). In *Carson*, this Court considered whether it was constitutionally permissible to impose a $1 fee as a court cost in all cases filed in counties with more than eight district courts and more than three county courts, including county courts at law.[7] The revenue collected from the $1 fee was directed to the "County Law Library Fund" and "available to be used for certain costs and expenses in acquiring, maintaining and operating a law library available to the judges of the courts and to the attorneys of litigants in the courts." *Id* at 127. In *Carson*, this Court addressed "whether or

---

[7] 159 S.W.2d at 127. In 1941 Annotated Civil Statutes Article 1702a expressly directed civil and criminal courts in certain counties to "tax" and collect a court cost of $1 to acquire, maintain, and operate a county law library for the benefit of the judges and attorneys of litigants. Act of May 26, 1941, 47th Leg., R.S., ch. 317, § 1, sec. 1702a,1941 Tex. Gen. & Spec. Laws 521 (codified at TEX. REV. CIV. STAT. art. 1702a), *repealed by* Act of Feb. 17, 1973, 48th Leg., R.S. ch. 192§ 4, 1943 Tex. Gen & Spec. Laws 297. Although it has no bearing on our analysis of *Carson*, the *Carson* Court reviewed the legislative evolution of Article 1702a in an attempt to decipher legislative intent, but the Court was slightly mistaken in its review. *See* 159 S.W.2d at 128-29. The *Carson* Court quotes Vernon's Annotated Civil Statutes Article 1702a and parenthetically refers to the "Acts of the Forty Second Legislature, 1931." However, the quoted section did not become law until Article 1702a was amended in 1941. In 1931 the Texas Legislature enacted House Bill 992, which authorized courts to "tax" both civil and criminal litigants fifty cents in each case in counties with eight or more district courts and four or more county courts for the purpose of establishing a "County Law Library." Act of May 28, 1931, 42nd Leg., R.S., ch. 236, 1931 Tex. Spec. Laws 457, 457-58. Article 1702a was amended in 1941 to increase the court cost assessed to one dollar and to include more counties by decreasing the number of county courts required to assess the court cost and include county courts of law in the tally of county courts. Act of May 26, 1941, 47th Leg., R.S., ch. 317, § 1, sec. 1702a,1941 Tex. Gen. & Spec. Laws 521 (codified at TEX. REV. CIV. STAT. art. 1702a). This error in legislative history has no substantive effect on our analysis of *Carson*'s reasoning, but rather merely exposes another snag in the fabric of what some would wave as the banner of binding precedent.

not such charge can be legitimately considered to be proper 'costs' in the trial of a case," and concluded that "the tax imposed by the bill is not and cannot be logically considered a proper item of cost in litigation, particularly in criminal cases." *Id.* at 127. This Court cautioned that to hold otherwise

> would lead into fields of expenditures which may as well include the cost of the court houses, the automobiles which officers use to apprehend criminals, and even the roads upon which they ride. If something so remote as a law library may be properly charged to the litigant on the theory that it better prepares the courts and the attorneys for the performance of their duties, it occurs to us that we might as logically tax an item of cost for the education of such attorneys and judges and even the endowments of the schools which they attend.

*Id.* The Court held that the bill authorizing the collection of the $1 cost was in violation of Section 56 of Article 3 of the Texas Constitution.[8] This Court further held in *Carson* that such cost was unconstitutionally discriminatory because defendants were taxed differently depending on the county in which they were convicted. *Id.* at 130. In the Court's opinion on the State's Motion for Rehearing in *Carson*, this Court clarified "that the item of one dollar taxed as costs for the Law Library Fund is neither necessary nor incidental to the trial of a

---

[8] *Id.* at 127. Article 3, Section 56, of the Texas Constitution is entitled "Local and Special Laws," and at the time *Carson* was decided, precluded the Legislature from passing certain local and special laws affecting counties, cities, and/or towns. The *Carson* opinion did not specify exactly how the court cost in that case was in violation of that constitutional provision. According to *Miller v. El Paso County,* 150 S.W.2d 1000, 1001 (Tex. 1941), "[t]he purpose of this constitutional inhibition against the enactment of local or special laws is . . . to prevent the granting of special privileges and to secure uniformity of law throughout the State as far as possible." TEX. CONST. art. III, § 56 interpretative commentary (West 2007).

criminal case, and that it is not a legitimate item to be so taxed." *Ex Parte Carson*, 159 S.W.2d 126, 130 (Tex. Crim. App. March 11, 1942) (op. on motion for reh'g).

In this case, the State urges us to reject the application of *Ex Parte Carson*, arguing that the DNA record fee is not a tax and is thus constitutional on its face. In support of its argument, the State cites to other jurisdictions that have found similar court cost statutes to be constitutional.[9]

B.      Reviewing a Facial Challenge to a Statute Mandating Court Costs[10]

(1)      *The Standard of Review*

The burden rests upon the individual who challenges a statute to establish its unconstitutionality. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App.1978). When reviewing the constitutionality of a statute, "we commence with the presumption that such statute is valid and that the Legislature has not acted unreasonably or arbitrarily in enacting

---

[9] *See State v. Claborn*, 870 P.2d 169, 171 (Okla. Crim. App. 1994) (holding that a court cost need only be "reasonably related to the costs of administering the criminal justice system" in order to not be considered a tax); *Broyles v. State,* 688 S.W.2d 290, 292 (Ark.1985) (holding that court costs of $302.25 for DWI defendant, which included an additional $250 that was allocated in part to programs relating to drunken driving, detoxification services and alcohol and drug abuse rehabilitation, was constitutional since funds go to agencies society has created to keep the highways safe from drunk drivers); *State v. Johnson,* 478 S.E.2d 16, 24 (N.C. App. 1996) (finding that a $100 fee imposed on a criminal convicted of a drug charge to recompense the state for costs of drug analysis was not a violation of the separation of powers doctrine because the charge is reasonably related to the costs of administering the criminal justice system).

[10] Justice Harvey Brown wrote a concurring and dissenting opinion in *Peraza v. State*. We agree with portions of Justice Brown's opinion addressing the constitutionality of the DNA Record Fee and have incorporated much of his analysis into this opinion.

the statute." *Id.* We must seek to interpret a statute such that its constitutionality is supported and upheld. *Luquis v. State*, 72 S.W.3d 355, 365 n. 26 (Tex. Crim. App. 2002) (citing to *United States v. National Dairy Products, Inc.*, 372 U.S. 29, 32 (1963)). A reviewing court must make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown. *Granviel*, 561 S.W.2d at 511; *see* TEX. GOV'T CODE ANN. § 311.021 (West 2013) (stating that courts presume "compliance" with the Texas and United States Constitutions).

"A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, No. 13–1175, 2015 U.S. Lexis 4065, at *9 (U.S. June 22, 2015). In order to successfully mount a facial challenge to Article 102.020, Peraza must establish that no set of circumstances exists under which that statute would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *State v. Rosseau,* 396 S.W.3d 550, 557 (Tex. Crim. App. 2013)*; Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). Under the proper facial-challenge analysis, only applications of a statute in which the statute actually authorizes or prohibits conduct are considered. *City of Los Angeles v. Patel*, 2015 U.S. Lexis 4065, at *13 (U.S. June 22, 2015) (citing to *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992)). Because courts are to "consider the statute only as it is written, rather than how it [may operate] in practice,"[11] it would be improper in this case to

---

[11] *State ex rel. Lykos*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011).

evaluate the facial constitutionality of Article 102.020 by theorizing where the funds collected pursuant to Article 102.020(a)(1), and distributed pursuant to Article 102.020(h), might be spent.

Nevertheless, in examining whether Peraza has met his burden of establishing that it is not possible for Article 102.020 to operate constitutionally under any circumstance, we still have to look into what applications are statutorily provided for. We must determine whether there are potential constitutional applications of Article 102.020 so that we can consider whether Peraza has met his burden to show that there are no possible constitutional applications of the statute. This point has been clarified most recently in *City of Los Angeles v. Patel*, wherein the United States Supreme Court reviewed the facial constitutionality of a statute authorizing a warrantless search. The Court explained that actual applications must be considered when reviewing a facial challenge, noting that, "the proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant." Therefore, "actual applications" authorized by the statute must be examined. *Id.*

(2) *Determining Whether A Court Cost May Be Constitutionally Valid*

In the 1942 case of *Ex Parte Carson,* this Court opined that a $1 library fund court cost was invalid because it was neither "necessary nor incidental to the trial of a criminal case." 159 S.W.2d at 130 (op. on motion for reh'g). The Court could not accept the view that the $1 fee could be taxed as a proper item simply because the money was to be used in the

establishment and maintenance of a law library. The Court held that such reasoning would lead into "fields of expenditures" that were too remote. *Id.* The Court in *Carson* did not invalidate the $1 law library fee because that fee had potentially unconstitutional uses. The law library fee had only one use—to fund expenses associated with a law library. Its illustration of other potentially invalid court costs[12] was a *reductio ad absurdum*[13] argument used to support its conclusion that the law library fee itself was invalid.

In this case, the First Court of Appeals drew a parallel between the collection of a DNA record fee pursuant to Article 102.020 and the collection of a law library fee in *Carson*. The First Court held that, because Article 102.020 required the collection of court costs that could be dedicated to uses that were not legitimate under *Carson*, such potentially invalid uses rendered the statute unconstitutional. However, we cannot hold a statute requiring the assessment of court costs facially unconstitutional simply because there might be a potential and/or remote circumstance in which it may be applied unconstitutionally. Rather, as discussed above, a statute is facially unconstitutional only if it "always operates unconstitutionally in all possible circumstances." *State v. Rosseau*, 396 S.W.3d at 556 (citing to *State ex rel. Lykos v. Fine*, 330 S.W.3d at 908-09).

---

[12] "If something so remote as a law library may be properly charged to the litigant on the theory that it better prepares the courts and the attorneys for the performance of their duties, it occurs to us that we might as logically tax an item of cost for the education of such attorneys and judges and even the endowments of the schools which they attend." *Carson*, 159 S.W.2d at 127.

[13] *Reductio ad absurdum* is the technique of reducing an argument or hypothesis to absurdity.

To determine whether a statute always operates unconstitutionally in all possible circumstances, we must look to see if there are potential applications of the statute that are constitutionally valid. In this case, we must examine whether the allocation of court costs assessed pursuant to Article 102.020 allows for constitutionally valid expenditures. To make this determination, we first decide whether the rule in *Carson* still provides a workable standard to determine whether a court cost is valid. Peraza argues that *Carson* supports the holding that, since the court costs collected pursuant to Article 102.020 are allocated to expenditures that might not be necessary or incidental to the trial of a criminal case, the assessment of such court costs constitutes an unconstitutional tax. The State counters that *Carson* should not be the standard and urges a less rigid test for determining whether a court cost is valid, such as the one given by the court in *State v. Claborn*, 870 P.2d 169 (Okla. Crim. App. 1994).

In *Claborn*, the Oklahoma Court of Criminal Appeals addressed the specific issue of whether a court cost must arise out of the defendant's particular prosecution in order to be legitimately assessed against that defendant. It held that it did not, overruling *Ex parte Coffelt*, 228 P.2d 199, 201 (Okla. Crim. App. 1951) (finding that certain statutes requiring a defendant's payment of a $1 fee into a parole fund were unconstitutional because they did not "bear a true relation to the expenses of [that particular] prosecution"). In *Claborn* the Oklahoma Court adopted a "more relaxed standard," holding that, "as long as a criminal

statutory assessment is reasonably related to the costs of administering the criminal justice system, its imposition will not render the courts 'tax gatherers' in violation of the separation of powers doctrine." 870 P.2d at 171.

Other jurisdictions have examined this issue.[14]  In *Carter v. City of Norfolk*, 147 S.E.2d 139 (Va. 1966), the Supreme Court of Virginia held that statutory court costs collected to reimburse the State for expenses incurred by it as a result of prosecuting traffic offenses have a "true and direct relationship" to those types of prosecutions, and are thus constitutionally valid. *Id.* at 144.  In *State v. Young*, 238 So.2d 589 (Fla. 1970), the Supreme Court of Florida found that there must be a "direct relationship" between the type of offense of which the defendant was convicted and the cost of court being assessed, noting that "[i]t is not unreasonable that one who stands convicted of such an offense should be made to share in the improvement of the agencies that society has had to employ in defense against the very acts for which he has been convicted." *Id.* at 590.  In *State v. Lanclos*, 980 So.2d 643 (La. 2008), the Louisiana Supreme Court agreed that a cost must be reasonably related to the administration of justice.  The court held that a $5.00 cost for committing an offense on the Huey P. Long Bridge or the Lake Pontchartrain Causeway Bridge was an unconstitutional tax levied improperly through the judicial system because it was not "sufficiently related to the administration of justice."  Rather, the cost funded the salaries and equipment of the

---

[14] *See supra* note 9.

Greater New Orleans Expressway Commission, and thus was "too far attenuated from the 'administration of justice,' to be considered a legitimate court cost." 980 So.2d at 654. The court held that "[e]very expense incurred by the police department in its role in enforcing the laws of this state cannot be funded through 'court costs.'" Rather, as long as the court costs "fund functions of the judicial system," and relate to "the administration of justice," they are legitimately assessed costs of court. *Id.*

In *Weir v. State*, 278 S.W.3d 364 (Tex. Crim. App. 2009), we addressed the issue of whether court costs could be included in the trial court's written judgment if they were not included in the oral pronouncement of sentence. We held that they could. Although we noted that court costs were intended by the Legislature to be "recoupment of the costs of judicial resources expended in connection with the trial of the case,"[15] we did not intend for this statement to be dispositive of the issue before us today. The constitutional validity of the court costs in *Weir* was not at issue.

We continue to hold, as we did in *Weir*, that court costs should be related to the recoupment of costs of judicial resources. However, we must revisit whether *Carson*'s requirement—that such costs be "necessary" and "incidental" to the trial of a criminal case—is still a proper standard for assessing whether a court cost assessed against a criminal defendant is constitutionally valid. The terms "necessary" and "incidental" are commonly

---

[15] *Id.* at 366.

used and easily understood words; however, we find that they are too limiting to continue to be the litmus test. In the 73 years since *Carson* was decided, the prosecution of criminal cases and our criminal justice system have greatly evolved. Our legislature has developed statutorily prescribed court costs with the intention of reimbursing the judicial system for costs incurred in the administration of the criminal justice system. To require such costs to be "necessary" or "incidental" to the trial of a criminal case in order to be constitutionally valid ignores the legitimacy of costs that, although not necessary to, or an incidental expense of, the actual trial of a criminal case, may nevertheless be directly related to the recoupment of costs of judicial resources expended in connection with the prosecution of criminal cases within our criminal justice system.

We therefore reject *Carson*'s requirement that, in order to pass constitutional muster, the statutorily prescribed court cost must be "necessary" or "incidental" to the "trial of a criminal case." We hold that, if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes,[16] then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the separation of powers clause.

---

[16] We adopt this phrasing from *McAfee v. State*, 2015 WL 2235122 (Tex. App.—Houston [1st Dist.] 2015), a case that was recently decided by the First Court of Appeals in Houston. The *McAfee* panel included Justice Harvey Brown, who wrote the dissenting opinion in this case. *McAfee* cites to *O'Bannon v. State*, 435 S.W.3d at 382, in support of its conclusion that the appellant failed to satisfy his burden to show that the statute authorizing court costs for a "crime stopper's fee" was facially unconstitutional.

A criminal justice purpose is one that relates to the administration of our criminal justice system. Whether a criminal justice purpose is "legitimate" is a question to be answered on a statute-by-statute/case-by-case basis.[17]

C. The Sixty-Five Percent Deposited To The Credit of The Criminal Justice Planning Account

The First Court found that the DNA Record Fee unconstitutionally benefits the criminal justice planning account because the account is too remote to be considered a necessary or incidental cost of prosecuting a criminal case.[18] The First Court cited several possible uses of money from the criminal justice planning account that are not related to the prosecution of a criminal case.

However, as we have discussed, in focusing on where the funds collected under Article 102.020(a)(1) might actually go, the First Court incorrectly decided that Article 102.020 was unconstitutional because Peraza demonstrated the potential for unconstitutional

---

[17] Our decision today addresses the constitutionality of a statute assessing court costs against a criminal defendant. In *State v. Lanclos*, 980 So.2d 643 (La. 2008), the court acknowledged a broad standard that could apply to both civil and criminal cases by requiring that court costs assessed "fund functions of the judicial system," and relate to "the administration of justice." However, the Louisiana Supreme Court decides both civil and criminal cases. We do not. Although, in general, we agree that court costs should relate to the recoupment of judicial resources, our analysis of the facial challenge in this case focuses on the constitutionality of assessing certain court costs against a criminal defendant.

[18] "[M]oney in the criminal justice planning fund is given to a vast number of diverse entities, almost of [*sic*] none of which have any relation to the collection of a defendant's DNA specimen or a criminal trial." *Peraza*, 457 S.W.3d at 149

applications. This, however, diminished his burden to establish that all applications of Article 102.020 are unconstitutional. Moreover, the First Court's holding runs afoul of precedent by favoring an unconstitutional reading over a constitutional reading when construing statutes. *Luquis v. State*, 72 S.W.3d at 365 n. 26.

The Department of Public Safety ("DPS") is required to collect a DNA specimen from every person charged with certain categories of crimes. The offense for which Peraza was convicted (aggravated sexual assault of a child under 14 years of age) is included on that list of crimes.[19] The criminal justice planning account allocates funds toward the collection and management of this statewide criminal DNA database. *See* TEX. CODE CRIM. PROC. ANN. art. 102.056 (West Supp.2014). Specifically, subsection (e) of article 102.056 directs that the Legislature

> . . . shall determine and appropriate the necessary amount from the criminal justice planning account to the criminal justice division of the governor's office for reimbursement in the form of grants to the Department of Public Safety of the State of Texas and other law enforcement agencies for expenses incurred in performing duties imposed on those agencies under Section 411.1471 or Subchapter B-1, Chapter 420, Government Code, as applicable.

*Id.* Article 102.056(e) also provides:

---

[19] TEX. GOV'T CODE ANN. § 411.142 (West 2012) (directing DPS to maintain "computerized database that serves as the central depository in the state for DNA records" that is compatible with FBI's national DNA identification index system); TEX. GOV'T CODE ANN. § 411.1471 (West 2012) (requiring collection of DNA specimens from people charged with or convicted of certain crimes, including aggravated sexual assault of a child under 14 years of age); TEX. PENAL CODE ANN. § 22.021 (West Supp.2014) (defining aggravated sexual assault of a child under 14 years of age).

[t]he criminal justice division through a grant [of money from the criminal justice planning account] shall reimburse the law enforcement agency for the costs not later than the 30th day after the date the certified statement is received. If the criminal justice division does not reimburse the law enforcement agency before the 90th day after the date the certified statement is received, the agency is not required to perform duties imposed under Section 411.1471 or Subchapter B-1, Chapter 420, Government Code, as applicable, until the agency has been compensated for all costs for which the agency has submitted a certified statement under this subsection.

*Id.*

The First Court was not persuaded that these directives in Article 102.056(e) reflect constitutionally permitted applications of Article 102.020. The First Court insisted that, even if DPS were reimbursed for DNA-related expenses, the fee is nevertheless unconstitutional because the criminal justice planning account funds other projects that are not related to managing the statewide criminal DNA database. However, if we were to follow this analysis, it would be enough for a party bringing a facial constitutional challenge to show that some possible applications of a statute are unconstitutional in order to justify invalidating every application of that statute. We do not follow this standard in reviewing a facial challenge.[20]

---

[20] *See Santikos*, 836 S.W.2d at 633 ("[T]he challenger must establish that no set of circumstances exists under which the statute will be valid."); *State ex rel. Lykos,* 330 S.W.3d 904, 908 (Tex. Crim. App. 2011) (holding that courts must "consider the statute only as it is written, rather than how it operates in practice"); *Karanev v. State,* 281 S.W.3d 428, 441 (Tex. Crim. App. 2009) (Cochran, J., concurring) (opining that a facial attack "can and must be made without reference to evidence").

Peraza must show that Article 102.020 does not allow for any constitutionally permissible applications. *Rosseau*, 396 S.W.3d at 557. Because a portion of the DNA record fee collected[21] is deposited[22] into the criminal justice planning account, and the criminal justice planning account is statutorily required[23] to reimburse monies spent collecting DNA specimens from offenders charged with certain offenses (including aggravated sexual assault of a child under 14),[24] we hold that the statute allows for constitutionally permitted applications. The statutory scheme allocating these resources to the criminal justice planning account are required, via interconnected statutory provisions, to be expended for legitimate criminal justice purposes. Therefore, they do not constitute a tax and thus do not violate the separation of powers clause. Peraza has not established that Article 102.020 operates unconstitutionally in all possible circumstances.

D. The Thirty-Five Percent Deposited To The Credit Of The State Highway Fund.

Our analysis above also applies with regard to Peraza's attack on the constitutionality of the portion of Article 102.020(h) allowing for payment of the DNA Record Fee into the State Highway Fund. According to Texas Government Code, Section 411.145, "money

---

[21] TEX. CODE CRIM. PROC. art. 102.020(a)(1).

[22] TEX. CODE CRIM. PROC. art. 102.020(h).

[23] TEX. CODE CRIM. PROC. art. 102.056(e).

[24] TEX. GOV'T. CODE ANN. § 411.1471.

deposited to the state highway fund under . . . 102.020(h), Code of Criminal Procedure, may be used only to defray the cost of administering [subchapter G of chapter 411] and Section 411.0205" of the Texas Government Code. Subchapter G governs the DPS's collection and management of DNA samples, which would have included Peraza's DNA specimen.[25] Section 411.0205 regulates the accreditation of forensic crime laboratories by DPS.[26] Thus, under the Texas Government Code, the portion of the DNA Record Fee credited to the state highway fund is used to defray the costs associated with collecting, storing, and testing DNA samples.

Again, the First Court decided that, since there was the possibility that the portion of the DNA Record Fee dedicated to the State Highway Fund might not be applied to a DNA-related expense, Article 102.020 was facially unconstitutional. Specifically, section 222.002 of the Texas Transportation Code provides that money in the state highway fund not earmarked for public roadways "may be used for any function performed by" the Texas Department of Transportation ("TxDOT").[27] TxDOT does not manage DNA sample collection, management, or testing, so some of the money might end up funding non-DNA related expenses. The First Court decided that, since TxDOT theoretically has access to the

---

[25] TEX. GOV'T CODE ANN. § 411.1471.

[26] TEX. GOV'T CODE ANN. § 411.0205.

[27] TEX. TRANSP. CODE ANN. § 222.002.

funds collected pursuant to Article 102.020, it is possible that the funds could operate as an unconstitutional tax, and thus the statute is facially unconstitutional. In other words, the First Court concluded that, the DNA record fee is an unconstitutional tax because the revenue could possibly benefit other activities unrelated to the statewide DNA database. However, for the reasons explained herein, this analysis is faulty.

TxDOT does not have exclusive access to the state highway fund. Rather, the Transportation Code simply states a general rule that TxDOT "may" access the fund. It is the more specific provision in the Government Code that requires the money from the DNA Record Fee that is deposited in the state highway fund to "be used only" by DPS to defray the cost of administering the DNA database.[28] The doctrine of *in pari materia* dictates that the statute specifically assigning DNA Record Fee revenue deposited into the state highway fund to DPS for DNA sampling and crime-lab accreditation prevails over the general statute relied upon by the First Court to support its claim that unconstitutional uses of the money are possible.[29] These statutes, read together, allow for—in fact, mandate—constitutionally valid

---

[28] TEX. GOV'T CODE ANN. § 411.145; *See also,* TEX. GOV'T CODE ANN. § 411.143(a) (West 2012) ("The principal purpose of the DNA database is to assist a federal, state, or local criminal justice agency in the investigation or prosecution of sex-related offenses or other offenses in which biological evidence is recovered.").

[29] When one statute deals with a subject in comprehensive terms, and another deals with a portion of the same subject in a more definite way, the specific rule prevails over the more general provision, absent contrary legislative intent. *Azeez v. State,* 248 S.W.3d 182, 192 (Tex. Crim. App. 2008). When two statutes are *in pari materia*, the doctrine requires that the statutes be "taken, read, and construed together, each enactment in reference to the other, as though they were parts of one and

uses of the DNA record fee collected under Article 102.020. The statutory scheme allocating these resources to the state highway fund are required, via interconnected statutory provisions, to be expended for legitimate criminal justice purposes. Therefore, they do not constitute a tax and thus do not violate the separation of powers clause.

Because Peraza has not demonstrated that every application of the statute assigning DNA Record Fee revenue to the state highway fund would be unconstitutional, he has not met his burden to show that the portion of the DNA Record Fee that benefits the state highway fund is facially unconstitutional.

## CONCLUSION

The interconnected statutory provisions providing for the allocation of the funds collected as court costs pursuant to Article 102.020 allow for such funds to be expended for legitimate criminal justice purposes. We hold that Peraza has not met his burden of establishing that it is not possible for Article 102.020 to operate constitutionally under any circumstance. We therefore reverse the decision of the First Court of Appeals and reinstate the court costs as set out in the trial court's judgments.

---

the same law." *Jones v. State,* 396 S.W.3d 558, 561-62 (Tex. Crim. App. 2013) (citing to *Azeez*, 248 S.W.3d at 192). If the statutes irreconcilably conflict, "the more detailed enactment . . . will prevail, regardless of whether it was passed prior to or subsequently to the general statute, unless it appears that the legislature intended to make the general act controlling." *Id.; see also, Ex parte Smith,* 185 S.W.3d 887, 892 (Tex. Crim. App. 2006); TEX. GOV'T CODE ANN. § 311.026(b) (West 2013) ("If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision . . . .").

DELIVERED: July 1, 2015
PUBLISH