PD-1671-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/10/2016 8:39:36 AM
Accepted 6/10/2016 11:30:27 AM
ABEL ACOSTA
CLERK

No. PD 1671-15

IN THE COURT OF CRIMINAL APPEALS
OF THE STATE OF TEXAS

CARLTON CHARLES PENRIGHT,
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

On Petition for Discretionary Review
from the First Court of Appeals in No 01-12-00647-CR,
Cause Number 1247950 from the 174th District Court of Harris County, Texas

**BRIEF FOR APPELLANT**

**Oral Argument Not Requested**

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**JANI MASELLI WOOD**
Assistant Public Defender
Harris County, Texas
TBN. 00791195
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278

**Counsel for Appellant**
**Carlton Charles Penright**

FILED IN
COURT OF CRIMINAL APPEALS

June 10, 2016

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND COUNSEL

Appellant:        Carlton Charles Penright
               TDCJ-ID# 01811722
               Gurney Unit
               1385 FM 3328
               Tennessee Colony, TX 75803

Trial Prosecutor:      Mr. Ed McClees
Appellate Prosecutor     Ms. Jessica Akins
               Assistant District Attorneys
               Harris County, Texas
               1201 Franklin, 6th Floor
               Houston, Texas 77002

Defense Counsel at Trial:    Steven Greenlee
               4303 Whippoorwill Circle
               Missouri City, Texas 77459-2977

Presiding Judge:      Hon. Ruben Guerrero
               174th District Court
               Harris County, Texas
               1201 Franklin, 19th floor
               Houston, Texas 77002

Defense Counsel on Appeal:   Jani Maselli Wood
               Assistant Public Defender
               Harris County, Texas
               1201 Franklin, 13th Floor
               Houston, Texas 77002

# TABLE OF CONTENTS

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Statement of the Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Issue Granted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

> Ground One: The Court of Appeals' decision that the consolidated
> court cost was constitutional failed to explain how the comprehensive
> rehabilitation fee is a legitimate criminal justice purpose

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

> The Comprehensive Rehabilitation Fee statute is invalid on its face. . . . . . . . . 11

> There is no authority or reasoning for why the Comprehensive
> Rehabilitation Fee is a legitimate court cost. . . . . . . . . . . . . . . . . . . . . . . . . . 11

> Unlike the DNA record fee, the Comprehensive Rehabilitation Fee does
> not involve legitimate criminal justice purposes. . . . . . . . . . . . . . . . . . . . . . . 13

> Class C tickets to Capital Murder convictions pay this fee. . . . . . . . . . . . . . . 14

> Each individual cost under the consolidated court cost statute must be
> analyzed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

> The former family protection fee - partly constitutional and partly not. . . . . . 16

> A statute that is unconstitutional in part is an unconstitutional statute. . . . . . 17

    Changes in Texas with court costs and poor people. . . . . . . . . . . . . . . . . . . . . . 19

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# INDEX OF AUTHORITIES

**Cases**:

*Penright v. State*, 01-12-00647-CR, 2015 WL 5770006
(Tex. App.—Houston [1st Dist.] Sept. 29, 2015, no. pet. h.). . . . . . . . . . . . . . . . 7

*Peraza v. State*, 467 S.W.3d 508 (Tex. Crim. App. 2015).. . . . . . . . . . . . . . . . . . . . passim

*Salas v. State*, 365 S.W.2d 174 (Tex. Crim. App. 1963). . . . . . . . . . . . . . . . . . . . . . . 16

*Salinas v. State*, 426 S.W.3d 318, 333 (Tex. App.—Houston [14th Dist.] 2014),
*rev'd*, 464 S.W.3d 363 (Tex. Crim. App. 2015).. . . . . . . . . . . . . . . . . . . . . . 15, 16

*Tussey v. State*, 494 S.W.2d 866, 870 (Tex. Crim. App. 1973). . . . . . . . . . . . . . . . . . . . 15

**Statutes, Rules, Opinions, and Miscellaneous**

TEX. GOV'T CODE ANN. § 51.961 (West 2013). . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

TEX. GOV'T CODE ANN. § 311.032© (West 2005). . . . . . . . . . . . . . . . . . . . . . . . . 18

TEX. GOV'T CODE ANN. § 501.014 (e)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. HUM. RES. CODE ANN.§ 111.052.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

TEX. HUM. RES. CODE ANN. § 111.060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

TEX. HUM. RES. CODE ANN. § 115.001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

TEX. LOC. GOV'T CODE ANN. § 133.102. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 16

TEX. PENAL CODE ANN. § 22.011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

TEX. ATT'Y GEN. OP. NO. GA-0387 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Testimony of Vikrant P. Reddy, Senior Research Fellow,
    Charles Koch Institute.
    Before the United States Commission on Civil Rights Briefing: Municipal
    Policing and Courts: A Search for Justice or a Quest for Revenue. . . . . . . . . . 10

George Mason,
    Fairfax County Freeholders' Address and Instructions to Their General
    Assembly Delegates (May 30, 1783), *in* Jeff Broadwater, GEORGE
    MASON: FORGOTTEN FOUNDER 153 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Kendall Taggart & Alex Campbell,
    *Their Crime: Being Poor. Their Sentence: Jail.*. . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

STATEMENT OF THE CASE

This is an appeal from the felony offense of sexual assault. (C.R. at 170). *See* TEX. PENAL CODE ANN. § 22.011. After a trial by jury, Mr. Penright was convicted and the jury assessed punishment at 15 years confinement in the Texas Department of Criminal Justice - Institutional Division. (C.R. at 170). The judgment was dated June 28, 2012. (C.R. at 170). Timely notice of appeal was filed. (C.R. at 177).

A motion in arrest of judgment and a motion for new trial were filed on July 25, 2012. (II C.R. at 201, 273). The motions were set for a hearing to be held on August 31, 2012. (II C.R. at 356). Four subpoenas for witnesses were issued for that date. (II C.R. at 311-28). The court notified counsel they were "closed" that day and reset the hearing to September 7, 2012. (II C.R. at 371). The same witnesses were again placed under subpoena. (II C.R. at 331-49). The court had a capital jury to pick on September 7, 2012 and chose to reset the hearing to September 21, 2012, outside of the 75th day. (II C.R. at 371). The 75th day after the judgment was September 11, 2012, so no hearing was able to be held.

STATEMENT OF THE PROCEDURAL HISTORY

On October 21, 2013, the Court of Appeals abated this cause and remanded it for a hearing on the motion for new trial. The hearing was held and the case reinstated on March 7, 2014. In an unpublished opinion, the First Court of Appeals affirmed Mr. Penright's conviction. *Penright v. State*, 01-12-00647-CR, 2015 WL 5770006 (Tex. App.—Houston [1st Dist.] Sept. 29, 2015, no pet.). A timely motion for reconsideration *en banc* was filed on October 19, 2015. The State was ordered to

respond and did so on November 10, 2015. The motion was denied on December 8, 2015, with Justice Jennings dissenting. The petition for discretionary review was filed on February 8, 2016. After an extension of time, this brief is timely if filed on or before June 10, 2016.

APPELLANT'S GRANTED ISSUE:

Ground One: The Court of Appeals' decision that the consolidated court cost was constitutional failed to explain how the comprehensive rehabilitation fee is a legitimate criminal justice purpose.

STATEMENT OF FACTS

Mr. Penright was ordered to pay court costs originally totaling $534 including the $133 consolidated court cost. (C.R. at 170). Only after the cost bill was requested and the JIMS pages filed, was an error in the amount of court costs discovered and surreptitiously corrected. (II C.R. at 221, 257). The later version deleted one of the Sheriff's fees and had a new page one subtotal of $60.00.

Both costs bills charged Mr. Penright for the $133 consolidated court cost. (II C.R. at 222, 258).

Mr. Penright filed a motion in arrest of judgment and a motion for new trial challenging the constitutionality of the consolidated court cost.

SUMMARY OF THE ARGUMENT

The Comprehensive Rehabilitation fee is an unconstitutional tax. It has no legitimate criminal justice purpose and should be struck. A broader question becomes what to do with the Consolidated Court Cost. This Court can strike the unconstitutional portion - which undermines the entirety of the consolidated court cost statute. This Court could try and excise the unconstitutional portion and leave the other constitutional portions in place - but this option is most likely unworkable.

ARGUMENT

Ground One: The Court of Appeals' decision that the consolidated court cost was constitutional failed to explain how the comprehensive rehabilitation fee is a legitimate criminal justice purpose.

"The times they are a-changin'."[1]

– Bob Dylan

...a conflict of interest exists among the police officers, judges, community supervision officers, etc. who are responsible for executing the functions of the criminal justice system. As the founding father George Mason observed, "When the same man, or set of men, holds both the sword and the purse, there is an end of liberty."[2]

... the reliance on criminal justice fees and fines to fund a government's basic services is counter-productive. Such practices are unaccountable and opaque, and they introduce dreadful incentives for abuse.[3]

Raising revenue ... has never been considered a legitimate purpose of the criminal justice system, and yet, over the last few decades, criminal justice fees and fines have in fact become a major mechanism for raising state and local revenue.[4]

– Charles Koch Institute Senior Fellow Vikrant P. Reddy

---

[1] https://www.youtube.com/watch?v=e7qQ6_RV4VQ

[2] Testimony of Vikrant P. Reddy, Senior Research Fellow, Charles Koch Institute. Before the United States Commission on Civil Rights for the March 18, 2016 Briefing: Municipal Policing and Courts: A Search for Justice or a Quest for Revenue, *citing* George Mason, Fairfax County Freeholders' Address and Instructions to Their General Assembly Delegates (May 30, 1783), *in* Jeff Broadwater, GEORGE MASON: FORGOTTEN FOUNDER 153 (2006).
https://securisync.intermedia.net/Web/#/s?public_share=kYWfwhhUK2KP_ip3l6z Aab&id=LzIwMTYgUGFzdCBCcmllZmluZ3MvMy0xOC0xNiBNdW5jaXBhbCBQ b2xpY2luZyBhbmQgQ291cnRzL1BhbmVsIDEvVmlrcmFudCBSZWRkeQ%3D%3D

[3] *Id.*

[4] *Id.*

**The Comprehensive Rehabilitation Fee statute is invalid on its face**.

When challenging a statute as facially unconstitutional, this Court explained in

*Peraza v. State*,

> "A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*,——U.S. ——, ——, 135 S.Ct. 2443, 192 L.Ed.2d 435 (2015). In order to successfully mount a facial challenge to Article 102.020, Peraza must establish that no set of circumstances exists under which that statute would be valid.

*Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1188

(2016).  This Court directed that the evaluation of a statute should review whether a

defendant "has met his burden to show that there are no possible constitutional

applications of the statute." *Peraza*, 467 S.W.3d at 515.  In deciding the DNA record

fee was constitutional, this Court explained:

> The statutory scheme allocating these resources to the state highway fund are required, via interconnected statutory provisions, to be expended for legitimate criminal justice purposes. Therefore, they do not constitute a tax and thus do not violate the separation of powers clause.

*Peraza*, 467 S.W.3d at 521.  Conversely, a court cost that is not expended for a

legitimate criminal justice purpose is a tax and does violate the separation of powers

clause.

**There is no authority or reasoning  for  why  the Comprehensive Rehabilitation Fee is a legitimate court cost.**

Court costs must be "expended for legitimate criminal justice purposes."

*Peraza*, 467 S.W.3d at 517.  "A criminal justice purpose is one that relates to the

administration of our criminal justice system." *Id.*

The Comprehensive Rehabilitation fee is 9.8218 percent of the consolidated

court cost.   TEX. LOC. GOV'T CODE ANN. § 133.102 (e)(6).(West).   The

-11-

Comprehensive Rehabilitation Fee funds are spent at the direction of the Department of Assistive and Rehabilitative Services - an executive branch agency. *See* TEX. HUM. RES. CODE ANN. § 115.001. A cursory review of the statute for this agency establishes:

> (a) The comprehensive rehabilitation fund is created in the state treasury. Money in the fund is derived from court costs collected under Subchapter D, Chapter 102, Code of Criminal Procedure. Money in the fund may be appropriated only to the commission for the purposes provided by Section 111.052.

TEX. HUM. RES. CODE ANN. § 111.060. A review of the "purposes" of this money under current Texas law is:

> (a) The commission shall, to the extent of resources available and priorities established by the board, provide rehabilitation services directly or through public or private resources to individuals determined by the commission to be eligible for the services under a vocational rehabilitation program or other program established to provide rehabilitative services.
>
> b) In carrying out the purposes of this chapter, the commission may:
>
> > (1) cooperate with other departments, agencies, political subdivisions, and institutions, both public and private, in providing the services authorized by this chapter to eligible individuals, in studying the problems involved, and in planning, establishing, developing, and providing necessary or desirable programs, facilities, and services, including those jointly administered with state agencies;
> > (2) enter into reciprocal agreements with other states;
> > (3) establish or construct rehabilitation facilities and workshops, contract with or provide grants to agencies, organizations, or individuals as necessary to implement this chapter, make contracts or other arrangements with public and other nonprofit agencies, organizations, or institutions for the establishment of workshops and rehabilitation facilities, and operate facilities for carrying out the purposes of this chapter;
> > (4) conduct research and compile statistics relating to the provision of services to or the need for services by disabled individuals;

(5) provide for the establishment, supervision, management, and control of small business enterprises to be operated by individuals with significant disabilities where their operation will be improved through the management and supervision of the commission;

(6) contract with schools, hospitals, private industrial firms, and other agencies and with doctors, nurses, technicians, and other persons for training, physical restoration, transportation, and other rehabilitation services; and

(7) assess the statewide need for services necessary to prepare students with disabilities for a successful transition to employment, establish collaborative relationships with each school district with education service centers to the maximum extent possible within available resources, and develop strategies to assist vocational rehabilitation counselors in identifying and reaching students in need of transition planning.

TEX.HUM.RES. CODE ANN.§ 111.052.

**Unlike the DNA record fee, the Comprehensive Rehabilitation Fee does not involve legitimate criminal justice purposes.**

Unlike the DNA record fee, which this Court held to be constitutional in *Peraza*, this fee destination under the consolidated court cost (CCC) has no relationship at all to courts or criminal justice. The program's goal is to "provide rehabilitation services directly or through public or private resources to individuals determined by the commission to be eligible for the services under a vocational rehabilitation program or other program established to provide rehabilitative services." TEX.HUM.RES. CODE ANN.§ 111.052. While laudable and certainly something government should care for - under the new standard created by this Court, it is wholly unrelated to criminal justice. Every single time the CCC is assessed, 9.8218% of the fee goes to Comprehensive Rehabilitation - a purpose unrelated to criminal justice. Therefore, directing a court cost to comprehensive

-13-

rehabilitation is facially unconstitutional because every single CCC goes partially for this purpose.

**Class C tickets to Capital Murder convictions pay this fee.**

This Comprehensive Rehabilitation Fee is paid by not just people who are convicted of first degree felonies. It is paid by people who get a ticket for jaywalking:

> (a) A person convicted of an offense shall pay as a court cost, in addition to all other costs:
>
>> (1) $133 on conviction of a felony;
>>
>> (2) $83 on conviction of a Class A or Class B misdemeanor; or
>>
>> (3) $40 on conviction of a nonjailable misdemeanor offense, including a criminal violation of a municipal ordinance, other than a conviction of an offense relating to a pedestrian or the parking of a motor vehicle.

TEX. LOC. GOV'T CODE ANN. § 133.102 (West). This is exactly the type of fee that is wholly unrelated to the charge or the court and can result in people being jailed for failure to pay. While there are laws that prohibit the incarceration of the indigent - it is routinely done:

> But in many courts across the Lone Star State, it is as if the law and the Supreme Court rulings never happened. A BuzzFeed News investigation into Texas judicial practice found that with no public defenders present, traffic court judges routinely flout the law, locking up people for days, weeks, and sometimes even months because they did not pay fines they could not afford. The result is a modern-day version of debtors prison, an institution that was common two centuries ago but has been outlawed since the early '70s.

-14-

Kendall Taggart & Alex Campbell, *Their Crime: Being Poor. Their Sentence: Jail.*[5] As a policy matter, this Court decided in *Peraza* that a defendant must shoulder the burden of costs that are legitimately related to criminal justice.[6] This cost is not related. This cost is a cog in the criminalization of poverty and the jailing of the poor. It is not a cost that should be borne as a court cost.

**Each individual cost under the consolidated court cost statute must be analyzed.**

As to the constitutionality of the entire statute:

> It has been consistently held that where a portion of a statute has been declared unconstitutional, and there is an absence of a saving or severability clause, the remainder of the statute must be sustained if it is complete in itself and capable of being executed in accordance with the legislative intent wholly independent of that which has been rejected.

*Tussey v. State*, 494 S.W.2d 866, 870 (Tex. Crim. App. 1973). There is no savings clause or severability clause in the consolidated court cost statute. Additionally, were one section to be found unconstitutional, it would undermine the entirety of the statute. As Justice Jamison explained in her dissent in *Salinas*:

> Under the circumstances presented in this case, the statute requires $133 be gathered and distributed according to specified percentages. Period. Because the statute cannot be salvaged by severing constitutionally-funded programs from those not properly funded, the statute is facially unconstitutional even if certain of the listed programs could be constitutionally funded through court costs assessed against criminal defendants.

---

[5] https://www.buzzfeed.com/kendalltaggart/in-texas-its-a-crime-to-be-poor?utm_term=.rpd00QoZr#.kpdWWJ9lv (last visited site 6/4/2016).

[6] All inmates pay court costs from their inmate trust fund. TEX. GOV'T CODE ANN. § 501.014 (e)(4) (West). Any money sent to indigent inmates is subject to garnishment.

*Salinas v. State*, 426 S.W.3d 318, 333 (Tex. App.—Houston [14th Dist.] 2014), *rev'd*, 464 S.W.3d 363 (Tex. Crim. App. 2015)(Jamison, J., dissenting). The severability issue can really only be resolved in one way. The statute should be declared entirely unconstitutional as Justice Jamison explained in her dissent. That determination would make sense because the statute reads that:

> A person convicted of an offense shall pay as a court cost, in addition to all other costs:(1) $133 on conviction of a felony;

TEX. LOC. GOV'T CODE ANN. § 133.102 (Vernon).

If this Court were to determine certain portions of the statute unconstitutional, it would not be the intent of the legislature that the constitutional portions reapportion the $133 court cost.

An alternative way to handle the problem might be that the statute's percentage could be reapportioned. It could be calculated to fit the percentage dictated by the statute. However, this would make (b)(1)'s $133 stated amount inaccurate. The constitutional portions of the statute funding valid court costs could be excised if this Court concluded they are wholly independent to the entirety of the statue. *See Salas v. State*, 365 S.W.2d 174, 175 (Tex. Crim. App. 1963)(explaining that "if the unconstitutional or void portion of any statute be stricken out and that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, the statute must be sustained"). However, this possibility is unworkable.

**The former family protection fee - partly constitutional and partly not**.

Ten years ago, the Attorney General considered the constitutionality of Section 51.961 of the Government Code. *See* TEX. ATT'Y GEN. OP. NO. GA-0387

(2005). This statute authorized county commissioners courts to adopt a "family protection fee" in an amount not to exceed $30. *See* Act of June 2, 2003, 78th Leg., ch. 198, 2003 Tex. Gen. Laws 711 (amended 2005 and 2007) (current version at TEX. GOV'T CODE ANN. § 51.961 (West 2013)). The fee was to be collected upon the filing of a suit for the dissolution of marriage. *Id.* Revenue from the fee was to be directed to two different destinations. *Id.* Subsection (d) commanded that one-half of the fee be deposited in the county's family protection account. *Id.* Subsection (g) mandated that the other half of the fee go to the State's child abuse and neglect prevention trust fund account. *Id.*

The AG opined that Subsection (g)'s allocation of revenue to the State's child abuse and neglect prevention trust fund account was unconstitutional. TEX. ATT'Y GEN. OP. NO. GA-0387 (2005) at 5. According to the AG, directing revenue to the trust fund violated the open courts provision of the Texas Constitution. *Id.* But the AG reiterated a previous opinion that Subsection (d)'s allocation of revenue to the county's family protection account was constitutional. *Id.* at 6-7. The salient message here is not the reasoning for the AG's opinion that one fee destination was constitutional while the other fee destination was not. Rather, the reason for citing this AG opinion is to show that certain statutes can have both constitutional and unconstitutional aspects.

**A statute that is unconstitutional in part is an unconstitutional statute.**

A statute can have both constitutional and unconstitutional aspects - every time the statute is applied. When is a fee statute applied? Every time the fee is assessed.

When a statute has unconstitutional aspects, the statute itself is unconstitutional. The statute cannot continue to exist unchanged. The unconstitutional portion of the statute must be excised from the rest of the statute. In some circumstances, the remaining portion of the statute can continue in effect. In other situations, the excision of the invalid portion of the statute makes this impossible. *See* TEX. GOV'T CODE ANN. § 311.032(C) (West 2005) ("[I]f any provision of the statute or its application to any person is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable.").

In the case of Section 51.961, the statute could not continue to stand - even with the offending provision severed out. In order to keep the constitutional portion of the statute in effect, the Legislature had to amend the statute. The Legislature did so in the very next legislative session. *See* Act of May 22, 2007, 80th Leg. R.S., ch. 637, 2007 Tex. Gen. Laws 1212, 1215. The amendment reduced the fee from $30 to $15. The amendment directed the $15 fee to the county's family protection account which the AG had found to be constitutional. Additionally, the amendment repealed Subsection (g) which had directed part of the prior $30 fee to the State's child abuse and neglect prevention trust fund.

As noted in the foregoing paragraph, when a portion of a statute is unconstitutional, the statute itself is unconstitutional.

**Changes in Texas with court costs and poor people.**

The Judicial Council of Texas considered changes to the Collection Improvement Program this month, with the Administrative Director explaining:

> The primary goal of the proposed amendments is to provide procedures that will help defendant's [sic] comply with court ordered costs, fines and fees without imposing undue hardship on defendants and defendant's dependents. The amendments also clarify that the CIP is not intended to encourage the incarceration of defendants who are unable to pay.[7]

The Judicial Council also received a letter from a "coalition of organizations" working together regarding court costs:

> Finally, these amendments will improve public confidence in the judiciary. Local courts around the country are the subject of an ongoing national conversation concerning administration of justice for defendants who are too poor to pay fines and fees. By clarifying that courts should not direct their most intensive collective efforts at people who struggle to support themselves and their families, these amendments promote the public perception that Texas courts do not view themselves as revenue centers, but rather as institutions striving toward the impartial administration of justice.[8]

> In Chief Justice Hecht's 2015 State of the Judiciary, he concluded

> All people yearn for justice. The prophet Amos cried, "Let justice roll down like waters, and righteousness like an ever-flowing stream." The Texas Judiciary is committed to this sacred cause.

http://www.txcourts.gov/media/857636/state-of-the-judiciary-2015.pdf

The CCC is unconstitutional because of the percentage of the court cost directed to comprehensive rehabilitation. It is a tax on the people of this state. It

---

[7]     http://www.txcourts.gov/media/1380461/Memo-re-proposed-CIP-amendments-5-27-16.pdf (last visited Junr 9, 2016).

[8] http://www.txcourts.gov/media/1382785/Comment-on-CIP-Changes.pdf
Letter was from representatives of the Texas Fair Defense Project, Texas Appleseed, Civil Rights Clinic, University Texas School of Law, and the ACLU of Texas.

results in indigent people being unfairly incarcerated. This Court should find the cost unconstitutional.

PRAYER

Mr. Penright prays this Court reverse the Court of Appeals and find the Comprehensive Rehabilitation Fee unconstitutional.

Respectfully submitted,
**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

*/s/ Jani J. Maselli Wood*
_____
**JANI J. MASELLI WOOD**
Assistant Public Defender
Harris County Texas
1201 Franklin, 13th Floor
Houston Texas 77002
Jani.Maselli@pdo.hctx.net
(713) 368-0016
(713) 368-4322
TBA No. 00791195

## CERTIFICATE OF SERVICE

Pursuant to Tex. R. App. Proc. 9.5, this certifies that on June 10, 2016, a copy of the foregoing was served electronically to counsel for the state (through texfile.com) at the following addresses:

Lisa McMinn
State Prosecuting Attorney
P.O. Box 13046,
Austin, TX 78711,
information@spa.texas.gov

Jessica Akins
Assistant District Attorney
1201 Franklin Street, 6th Floor
Houston, TX 77002
Akins_Jessica@dao.hctx.net

*Jani Maselli Wood*

_____

JANI J. MASELLI WOOD

## CERTIFICATE OF COMPLIANCE

Pursuant to proposed Rule 9.4(i)(3), undersigned counsel certifies that this petition complies with the type-volume limitations of *Tex. R. App. Proc. 9.4(i)(2)(D)*.

1.    Exclusive of the portions exempted by *Tex. R. App. Proc. 9.4 (i)(1)*, this petition contains 4,244 words printed in a proportionally spaced typeface.

2.    This petition is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 14 point font in footnotes produced by Corel WordPerfect software.

3.    Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in *Tex. R. App. Proc. 9.4(j)*, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

*Jani Maselli Wood*
_____
JANI J. MASELLI WOOD