

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0170-16

## ORLANDO SALINAS, Appellant

## v.

## THE STATE OF TEXAS

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTEENTH COURT OF APPEALS HARRIS COUNTY

**NEWELL, J. filed a dissenting opinion, in which RICHARDSON, J., joined.**

Of late, this Court has gotten fairly adept at striking down statutes as facially unconstitutional. Though there are some exceptions, these cases have generally applied a different standard of review than the one at work in this case. Those cases dealt with First Amendment, "overbreadth" challenges rather than the type of pure facial challenge we consider here that attacks a statute in its every application. *See e.g. Ex*

*parte Perry*, 483 S.W.3d 884 (Tex. Crim. App. 2016); *State v. Johnson*, 475 S.W.3d 860 (Tex. Crim. App. 2015); *Ex parte Thompson*, 442 S.W.3d 325 (Tex. Crim. App. 2014); *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013). The legislature even passed a law requiring courts to provide notice to the Attorney General before holding a statute unconstitutional, which this Court promptly held unconstitutional. *See Ex parte Lo*, 424 S.W.3d 10, 27 (Tex. Crim. App. 2013) (opinion on reh'g.) (holding that section 402.010 of the Texas Government Code unconstitutional because it violates the separation-of-powers provision of the Texas Constitution). Nevertheless, the Court's analysis in this regard has always been appropriately rigorous given the drastic nature of holding a statute unconstitutional.

That is not the case here. As Judge Yeary's dissent explains, a true facial challenge to a statute requires this Court to look for ways to uphold the statute, not ways to strike the statute down. *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act, is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). If the statute can result in the collection of funds for a legitimate criminal justice purpose, then it is not

unconstitutional in every application. *Peraza v. State*, 467 S.W.3d 508, 516 (Tex. Crim. App. 2015) ("To determine whether a statute always operates unconstitutionally in all possible circumstances, we must look to see if there are potential applications of the statute that are constitutionally valid."). There is no question that funds limited at collection to pay for comprehensive rehabilitation and abused children's counseling *could* be used for legitimate criminal justice purposes. The Court concedes as much. Maj. op. at 7.

That is why I do not agree with the Court that the failure of a statute to further specifically direct that the funds deposited in general revenue be used for a criminal justice purpose–aside from the limitations provided by the description of the fee itself and other interrelated statutes–means the legislature drafted a facially unconstitutional court-cost statute. *Peraza*, 467 S.W.3d at 519 (rejecting argument that DNA Record Fee was facially unconstitutional simply because it was deposited into the criminal justice planning account which funded other projects unrelated to managing the statewide criminal DNA database). The statutory provisions at issue are not simply general revenue collection; they direct funds collected go to particular purposes, and there are circumstances under which those funds would serve a legitimate criminal

justice purpose. Yet, the Court relies upon the possibility that the funds could be used for some other, illegitimate purpose to suggest that the statute is facially unconstitutional. On the one hand, the Court rejects the possible use of the funds for a legitimate criminal justice purpose as irrelevant to the analysis. But on the other, the Court links the facial constitutional flaw to the possibility that the funds could be used for an illegitimate purpose.

The Court compounds this problem by reading the limitations in the statutory provisions at issue in *Peraza* to be a necessary condition for constitutionality rather than merely a sufficient one. Unquestionably, the statutes at issue in *Peraza* provided more express limitations on the use of the court costs collected than are present in this case. *See Peraza*, 467 S.W.3d at 519. ("Because a portion of the DNA record fee collected is deposited into the criminal justice planning account, and the criminal justice planning account is statutorily required to reimburse monies spent collecting DNA specimens from offenders charged with certain offenses (including aggravated sexual assault of a child under 14), we hold that the statute allows for constitutionally permitted applications."). And we rejected Peraza's claims that the statutes providing for deposits in the criminal justice planning account and the state highway fund were facially

unconstitutional because specific statutes limited the use of the funds for a criminal justice purpose. *Id.* at 520-21. We held that Peraza, and the First Court of Appeals, were simply wrong that some of the money collected could be used for a purpose other than managing the statewide criminal DNA database or defraying the cost of administering it.

Yet, we never held that those limitations were required; we simply held that the interconnected statutory provisions "allow" for such funds to be expended for legitimate criminal justice purposes. *Id*. at 521. When we focused upon the remoteness of potential unconstitutional "applications", we still focused on how the money could have been spent, not on how it had been collected. *Id.* at 521. ("The statutory scheme allocating these resources to the state highway fund are required, via interconnected statutory provisions, to be expended for legitimate criminal justice purposes."). And at all times we maintained that it was the defendant's burden to show that it was not possible for the statute to operate constitutionally under any circumstance. *Id.*

If we are truly looking at whether the interconnected statutes are facially unconstitutional without regard to how the money is spent, then we should only be looking at whether the terms of the statutes specifically prevent, at the time of collection, the use of the funds for any

legitimate criminal justice purpose. *Peraza*, 467 S.W.3d at 516 ("[W]e cannot hold a statute requiring the assessment of court costs facially unconstitutional simply because there might be a potential and/or remote circumstance in which it may be applied unconstitutionally."). If such a statute were passed, it would, by its own terms rather than its possible effects, be unconstitutional in all of its applications. Admittedly, such a statute would seem unlikely to pass because it would be notoriously unconstitutional. But that accurately reflects how difficult it should be for the legislature to draft a statute that is unconstitutional in every application and how easy and obvious it should be to spot such constitutional infirmities.

The court's requirement of an express limitation of the statutes in question to only constitutional applications obviates the need for any presumption of constitutionality. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013) ("[A]nalysis of a statute's constitutionality must begin with the presumption that the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it."). Moreover, it turns that well-established presumption on its head and

removes any need for as-applied constitutional challenges.[1] This Court's holding could have far-reaching consequences for facial constitutional challenges to other statutes. That is why I whole-heartedly agree with Judge Yeary, and why I join his dissent.

But I write separately to clarify that arguing that the statutes at issue are constitutional is not the same thing as endorsing the legislature's drafting or the legislation's effect. As the Court thoroughly sets out, the statutes governing the collection of fees in criminal cases are written very broadly and with no express limitations on how fees deposited in the general revenue fund are ultimately spent, except that they must go to comprehensive rehabilitation and abused children's counseling. They could be used for legitimate criminal justice purposes, but they could also be used as a tax to fund any number of governmental initiatives unrelated to the proper functioning of the criminal justice system. Without the inclusions of more definite limitations, a "user-pay system" creates a devilishly tempting incentive for a "tax-free" governmental revenue stream. Unchecked, these types of fee statutes

---

[1] Indeed, the Court fails to mention any duty to employ a reasonable narrowing construction of the statutes at issue to avoid a constitutional violation. *See e.g. State v. Johnson*, 475 S.W.3d 860, 872 (Tex. Crim. App. 2015) (noting the duty of Texas courts to employ, if possible, a reasonable narrowing construction to avoid a constitutional violation); *Ex parte Thompson*, 442 S.W.3d 325, 339 (Tex. Crim. App. 2014) (same).

could threaten to grow the criminal justice system atop the court-cost equivalent of a sub-prime mortgage bubble.

That is why the recent public momentum for addressing the collection and administration of court costs in the legislature is not at all surprising. Many have noted that incarcerating the indigent for the failure to pay fines and court costs threatens to turn our jails into debtors prisons. *See e.g. Cain v. City of New Orleans,* 184 F. Supp. 3d. 349 (E.D. La. 2016); Joseph Shapiro, *As Court Fees Rise, The Poor are Paying the Price,* http://www.npr.org/2014/05/19/312158516/increasing-court-fees-punish-the-poor; Shaila Dewan and Andrew W. Lehren, *After a Crime, the Price of a Second Chance*, N.Y. TIMES, Dec. 12, 2016. The Chief Justice of the Texas Supreme Court, in his recent State of the Judiciary Address, remarked, "Jailing criminal defendants who cannot pay their fines and court costs – commonly called debtors' prison– keeps them from jobs, hurts their families, makes them dependent on society and costs the taxpayers money." Jonathan Silver, *Legislature Should Prioritize Judicial Security, Texas Supreme Court Justice Says*, Texas Tribune, https://www.texastribune.org/2017/02/01/state-judiciary. The legislature has heard these concerns and is moving to respond. Legislation is currently pending that begins to address the serious

problems attendant to funding the criminal justice system through fees paid by indigent criminal defendants. *See* Tex. H.B. 1465, 85th Leg., R.S. (2017).

But by stepping in to address a political issue as a constitutional one, we risk stealing that momentum away from the branch of government best able to treat the issue as a systemic one after input from all the relevant stakeholders. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008) (noting that, "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution."); *see also Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 329 (2006) (noting that courts must keep in mind that "'[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'"). As a Court, we can only look at the issue through an analytical keyhole–made all the more tiny by a harshly deferential standard of review–as each statute winds its way through the court system. *Peraza*, 467 S.W.3d at 518 ("Whether a criminal justice purpose is "legitimate" is a question to be answered on a statute-by-statute/case-

by-case basis.").[2]  It is ironic that we have intruded upon the province of another branch of government in the name of preserving the separation of powers.

The late Supreme Court Justice Antonin Scalia famously quipped that "a lot of stuff that's stupid is not unconstitutional."  Jennifer Senior, *In Conversation: Antonin Scalia*, NEW YORK MAGAZINE, Oct. 6, 2013.  He was, of course, expressing the view that not everything that is undesirable, annoying, or even harmful rises to the level of a constitutional crisis.  *Brown v. Chicago Board of Education*, 824 F.3d 713,

---

[2] The Court attempts to ameliorate this concern by adding the issue of retroactivity to our holding in this case and deciding it in favor of the State.  I would not address an issue the court of appeals has not had the opportunity to consider.  *See e.g. Armstrong v. State*, 805 S.W.2d 791, 794 (Tex. Crim. App. 1991) ("This Court and the Court of Appeals are without authority to render advisory opinions.").  Assuming we should address it, there are also significant problems with the Court's analysis, which borrows retroactivity jurisprudence for "court-made" rules and applies it to a holding striking down a duly-passed statute as facially unconstitutional.  *See Griffith v. Kentucky*, 479 U.S. 314 (1987) (considering retroactivity of court-made rule announced in *Batson v. Kentucky*); *Stovall v. Denno*, 388 U.S. 293, 296-97 (1967) (considering retroactivity of court-made rule regarding admissibility of tainted eyewitness identification testimony).  The Court fails to account for our jurisprudence holding a statute *void ab initio* when it has been declared facially unconstitutional.  *Smith v. State*, 463 S.W.3d 890, 895 (Tex. Crim. App. 2015); *Reyes v. State*, 753 S.W.2d 382, 383 (Tex. Crim. App. 1988); *Ex parte Bockhorn*, 62 Tex. Crim. App. 651, 138 S.W. 706, 707 (1911).  Declaring a statute facially unconstitutional is not finding constitutional court error or announcing a new court-made rule of criminal procedure; it is holding that the legislature passed a statute so blatantly unconstitutional it should have never been passed.  *Reyes*, 753 S.W.2d at 384 (holding that the determination that Article 32A.02 was void due to a violation of the separation of powers rendered the statute void from inception).  If we are going to address "retroactivity" at all, *Reyes v. State* would seem to control.  At the very least, I would not decide the issue without first ordering the parties to brief it, assuming it is even appropriate to address it in this case at all.  *Cf. Teague v. Lane*, 489 U.S. 288, 300 (1989) (deciding the issue of retroactivity of a court-made rule of criminal procedure at time the new rule was announced where retroactivity was raised in an amicus brief and addressed in reference to a related claim by the parties).

714 (7th Cir. 2016). He even went so far as to suggest that judges should be given a stamp that says, "stupid but constitutional." *Id*. These statutory provisions illustrate the need for such a stamp. If only the Court would use it.

With these thoughts, I dissent.

Filed: March 8, 2017

Publish