**Affirmed and Majority Opinion and Concurring and Dissenting Opinion filed December 20, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00511-CR

---

**NICHOLAS JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 8
Harris County, Texas
Trial Court Cause No. 2124534**

---

## M A J O R I T Y   O P I N I O N

Appellant Nicholas Jackson was convicted of a Class B misdemeanor for failing to stop and give information and was sentenced to two days in Harris County Jail. He appeals his conviction and the assessment of certain court costs. Concluding that the evidence was legally sufficient to support appellant's conviction, appellant did not prove he was egregiously harmed by purported jury charge error, and the court costs assessed against appellant are constitutional, we

affirm the trial court's judgment.

## *Background*

Jack Simmons was in the left turn lane at Montrose and Fairview Streets in Houston, Texas. Appellant's car was ahead of him while waiting to turn left. The solid green light afforded only an unprotected left turn. Appellant did not complete his turn before the light turned red, so he backed out of the intersection and made contact with the front of Simmons's car. Simmons felt his vehicle "shudder" from the impact and heard a pop and crack. When the light turned green again, both appellant and Simmons completed the left turn.

Simmons followed appellant for some distance while appellant kept driving. Simmons alerted the Houston Police Department at some point. Meanwhile, Simmons sounded his horn and flashed his lights four or five times. He pulled up next to appellant and asked, "Are you going to stop?" Appellant waved at Simmons but continued driving.

Officer Peters responded to Simmons's call and conducted a traffic stop. The stop was recorded on Peters's bodycam. Peters took a statement from Simmons and asked to see where appellant hit his vehicle. Simmons used a light on his cell phone to show Peters the damage. Peters also asked Simmons whether he wanted to prosecute or just obtain appellant's insurance information. Peters informed appellant that he had failed to pull over after an accident. Appellant appeared surprised and stated that he did not believe he had been in an accident. Peters told appellant that Simmons's vehicle had very little damage except to his front license plate.[1] Appellant's vehicle had no damage.

Appellant was indicted for "intentionally and knowingly" failing to stop and

---

[1] The estimate to repair the damage to Simmons's car was $577.97.

2

give his name and address to Simmons. The jury charge included a definition of "knowingly." Appellant did not object to the charge. A jury found appellant guilty, and the trial court sentenced him to two days' confinement in county jail, plus court costs, including a district attorney's fee of $25, a jury fee of $40, and a sheriff's fee of $15 for "Summoning Witness/Mileage."

## *Discussion*

Appellant challenges his conviction on the grounds of legal insufficiency and jury charge error. Appellant also challenges the constitutionality of certain court costs assessed against him.

## I.      The evidence is legally sufficient.

In his first issue, appellant argues the evidence is legally insufficient to prove he was knowingly involved in an accident. When reviewing sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Id*. This standard applies equally to both circumstantial and direct evidence. *Id*. Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

To establish failure to stop and give information, the State was required to prove that while operating a vehicle, appellant was "intentionally or knowingly" involved in an accident resulting in damage to another vehicle and failed to stop or provide required information. Tex. Transp. Code §§ 550.022(c), 550.023; *Steen v. State*, 640 S.W.2d 912, 915 (Tex. Crim. App. 1982). Appellant challenges only the legal sufficiency of the evidence that he was intentionally or knowingly involved in an accident.

Appellant argues that the totality of the evidence does not support a determination that he was knowingly involved in an accident with Simmons because appellant drove prudently while Simmons followed him, acted surprised when the officer said appellant had been involved in an accident, and sustained no damage to his vehicle, among other things.[2] We disagree.

The jury also heard the following testimony:

- Simmons felt his vehicle shudder when appellant backed into him;

- Simmons heard a pop and crack at the same time;

- While following Jackson, Simmons sounded his horn and flashed his lights about four or five times each;

- Simmons pulled alongside Jackson, rolled down his window and asked, "are you going to stop?" and

- The officer saw damage to the front of Simmons's vehicle.

Intent may be inferred from circumstantial evidence. *Darkins v. State*, 430 S.W.3d 559, 565 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). While appellant provided evidence that he did not know he was involved in an accident

---

[2] Appellant also contends that the culpable mental state of "intent" does not apply to the offense of failure to stop and give information. We need not reach this issue because we conclude there is legally sufficient evidence to support the jury's finding that appellant knowingly committed the offense.

with Simmons, the jury weighed this evidence against the above evidence.

The jury has the responsibility of weighing all the evidence, resolving any evidentiary conflicts, and drawing reasonable inferences from the evidence presented at trial. *See Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001). In light of the evidence presented and the reasonable inferences the jury was free to make, we conclude that the evidence is legally sufficient to show that appellant was knowingly involved in a traffic accident. We overrule appellant's first issue.

**II.    Appellant was not egregiously harmed by the trial court's definition of "knowingly" submitted to the jury.**

In his second issue, appellant argues that he was egregiously harmed because the charged offense is a "circumstances of conduct" offense and the court's charge did not limit the definition of "knowingly" to the circumstances surrounding his failure to stop and give information. The Court of Criminal Appeals has recognized three categories of offenses: "result of conduct," "nature of conduct," or "circumstances of conduct." *Robinson v. State*, 466 S.W.3d 166, 170 (Tex. Crim. App. 2015). Circumstances of conduct offenses prohibit otherwise innocent behavior that becomes criminal only under specific circumstances. *Id*.

In analyzing a jury charge issue, our first duty is to decide whether error exists. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If so, we then analyze that error for harm. *Id*. When a defendant fails to object to the charge, we will reverse only when the error was so egregious and created such harm that the defendant did not have a fair trial. *Bluitt v. State*, 137 S.W.3d 51, 52-53 (Tex. Crim. App. 2004); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). To determine whether a defendant has sustained egregious harm from a non-objected-to instruction, appellate courts consider (1) the entire charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any

other relevant information. *Bluitt*, 137 S.W.3d at 52-53; *Almanza*, 686 S.W.2d at 171.

Appellant complains that the trial court's definition of "knowingly" in the charge was too broad because it defined the term as involving knowledge of the result, nature, and circumstances of conduct and thus was not limited only to circumstances of conduct.[3] Presuming that the failure to stop and give information is a circumstances of conduct offense and that the court erred in not limiting the definition of "knowingly" as asserted by appellant, we conclude the error did not create harm such that the defendant did not have a fair trial.[4]

Appellant concedes that the focus of the evidence and the contested issues at trial were directed at whether he knew he had been in an accident. He further concedes that closing arguments also centered on whether he was knowingly involved in an accident. Appellant argues only that the charge should have omitted language involving nature of conduct and result of conduct offenses.[5] He does not argue that the state of the evidence, arguments of counsel, or any other relevant information advanced an erroneous theory. *See Bluitt*, 137 S.W.3d at 52-53. We conclude that appellant did not meet his burden of showing egregious harm and overrule his second issue.

---

[3] The definition of "knowingly" included in the charge follows:

A person acts knowingly, or with knowledge, with respect to the nature of his conduct, or to circumstances surrounding his conduct, when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

[4] Appellant does not contend that any Texas court has categorized the offense of failure to stop and give information as a circumstances of conduct offense.

[5] Appellant also complains that the term "intentional" was not defined in the charge but does not elaborate on how such purported error resulted in egregious harm.

### III. Challenged statutes imposing court costs are constitutional.

In his third through fifth issues, appellant challenges the constitutionality of statutes imposing court costs for district attorney's, jury's, and sheriff's fees. Appellant did not object to the imposition of court costs in the trial court. The costs were assessed in open court but not itemized in the judgment. The cost bill was generated the same day as the judgment, but it is not clearly incorporated into the judgment. The judgment includes a blank for "court costs," which states "$ as assessed."

Convicted defendants may object to the assessment of mandatory court costs against them for the first time on appeal when the judgment does not contain an itemization of the imposed court costs. *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016); *Bowden v. State*, 502 S.W.3d 913, 914 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). We presume that the challenged costs were "mandatory court costs" and thus preservation of these complaints was not required.

We review the constitutionality of a criminal statute de novo as a question of law. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it. *See Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *Eugene v. State*, 528 S.W.3d 245, 249 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Gov't Code § 311.021 (requiring courts to presume that "compliance" with Texas and United States Constitutions was intended). We must uphold the statute if we can apply a reasonable construction that will render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979). We make every reasonable presumption in favor of the statute's constitutionality unless the contrary is clearly

shown. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). The party challenging the statute has the burden to establish its unconstitutionality. *Id*.; *Rodriguez*, 93 S.W.3d at 69.

Appellant has made a facial challenge to the constitutionality of the statutes in question. A facial challenge is an attack on a statute itself as opposed to a particular application. *Peraza*, 467 S.W.3d at 514. In such a challenge, the challenger must establish that "no set of circumstances exists under which the statute would be valid." *Id*.; *see also State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013) (holding party asserting a facial challenge "must establish that the statute always operates unconstitutionally in all possible circumstances"). Because a facial challenge attacks a statute's validity in all circumstances, it is "the most difficult challenge to mount successfully." *See Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

In analyzing facial challenges to court costs, we consider only applications of a statute that it authorizes or prohibits. *See Peraza*, 467 S.W.3d at 515. We do not evaluate the facial constitutionality of a court cost by theorizing where the funds collected and distributed might be spent. *See id*.

Appellant claims the fees at issue violate the separation of powers provision of the Texas Constitution. The Texas Constitution expressly guarantees the separation of powers among the three branches of government. Tex. Const. art. II, § 1; *Salinas v. State*, 523 S.W.3d 103, 106 (Tex. Crim. App. 2017). Article II, section 1 of the Texas Constitution states the following:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the

8

instances herein expressly permitted.

Tex. Const. art. II, § 1.

This section ensures that the powers granted to one governmental branch may be exercised only by that branch, to the exclusion of the other branches. *Ex parte Lo*, 424 S.W.3d at 28. When one branch of government assumes or is delegated a power more properly attached to another branch, that assumption or delegation of power violates the separation-of-powers provision. *Salinas*, 523 S.W.3d at 106-07. If a statute turns the courts into tax gatherers, then the statute delegates to the courts a power more properly attached to the executive branch; however, the collection of fees in criminal cases is a part of the judicial function if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes. *See id.* at 106-07 (holding that consolidated fee statute was unconstitutional as to state government accounts for "counseling abused children" and "comprehensive rehabilitation"). In other words, a reviewing court must determine whether the fee is a disguised tax on a criminal defendant (which is unconstitutional) or a fee for a legitimate criminal justice purpose (which is constitutional). *Allen v. State*, No. 01-16-00768-CR, 2018 WL 4138965, at *6 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, pet. granted).

The earliest statement by the Court of Criminal Appeals on the constitutionality of court costs disallowed a library fee because it was neither necessary nor incidental to the trial of a criminal case. *Ex parte Carson*, 143 Tex. Crim. 498, 506, 159 S.W.2d 126, 130 (1942). The high court later modified the *Carson* test, rejecting the requirement under *Carson* that "to pass constitutional muster, the statutorily prescribed court cost *must* be 'necessary' or 'incidental' to the 'trial of a criminal case.'" *Peraza*, 467 S.W.3d at 517 (emphasis added). The

9

court stated that court costs should be related to the recoupment of costs of judicial resources, but it found the terms "necessary or incidental" too limiting. *Id.* The court did not say that necessary or incidental costs were unconstitutional, however. Court costs that satisfy *Carson* continue to be constitutional.

Our legislature has developed statutorily prescribed court costs with the intention of reimbursing the judicial system for costs incurred in the administration of the criminal justice system. *Id.* Although not necessary to or an incidental expense of the actual trial of a criminal case, the costs may nevertheless be directly related to the recoupment of costs of judicial resources expended in connection with the prosecution of criminal cases within our criminal justice system. *See id.*

In addition, if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application and does not violate the separation of powers provision. *Id.* (tracing allocation of funds collected as costs for DNA testing); *see also Johnson v. State*, No. 14-16-00658-CR, 2018 WL 4925456, at *5 (Tex. App.— Houston [14th Dist.] Oct. 11, 2018, no pet. h.). A "criminal justice purpose" is one that "relates to the administration of our criminal justice system" and should be evaluated on a statute-by-statute/case-by-case basis. *Peraza*, 467 S.W.3d at 517-18; *Johnson*, 2018 WL 4925456, at *5.

With this framework in mind, we address each challenged statute in turn. Appellant argues only that the costs at issue violate the separation of powers provision because they are allocated into the county's general fund and "allow spending for purposes other than legitimate criminal justice purposes."

**A. The district attorney's fee is constitutional.**

In his third issue, appellant challenges the district attorney fee "to the extent that it allocates funds to the county's general fund" as an impermissible tax

10

collected by the judiciary that is not expended for a legitimate criminal justice purpose. Code of Criminal Procedure article 102.008(a) imposes a $25 fee on a defendant convicted of a misdemeanor "for the trying of the case by the district or county attorney." Tex. Code Crim. Proc. art. 102.008(a). Another panel of this court recently overruled a facial constitutional challenge to article 102.008(a). *Moliere v. State*, No. 14-17-00594-CR, 2018 WL 6493882, at *6 (Tex. App.—Houston [14th Dist.] Dec. 11, 2018, no pet. h.). We concluded that the statute passes constitutional muster because it is collected to reimburse the prosecutor for costs incurred in trying the case as a "recoupment of costs" under *Peraza*. *See id.* (citing *Peraza*, 467 S.W.3d at 517). We overrule appellant's third issue.

### B. The jury's fee is constitutional.

In his fourth issue, appellant challenges the jury's fee "to the extent that it allocates funds to the county's general fund" as an impermissible tax collected by the judiciary that is not expended for a legitimate criminal justice purpose. Article 102.004(a) imposes a $40 fee on a defendant convicted by a jury in a county court, as here. Tex. Code Crim. Proc. art. 102.004(a). The State argues that an interconnected statute in the Local Government Code directs jury's fee funds to be deposited with the county treasurer. *See* Tex. Local Gov't Code § 113.004(b)(1); *see also* Tex. Att'y Gen. Op. No. GA-0262, at *4 (2004) (noting that jury's fees are to be deposited into a special fund that must be kept separate from other treasury funds).

Another panel of this court recently overruled a facial constitutional challenge to article 102.004(a). *Johnson*, 2018 WL 4925456, at *7-8. We held that although article 102.004(a) does not allocate the jury's fee to any specific fund or direct how the funds collected are to be expended, section 113.004 of the Local Government Code does. *Id.* at *7. Section 113.004 requires the $40 jury's fee to be

deposited into a fund designated for jury's fees, among other things, and used for the payment of claims registered in the class of claims corresponding to that fund.[6] *Id*. We concluded that section 113.004 not only allows but mandates that jury's fees collected under article 102.004 be used for legitimate criminal justice purposes. *Id*.

Consistent with our opinion in *Johnson*, we conclude that appellant has not met his burden to show that the jury's fees collected under the statute cannot be used for legitimate criminal justice purposes in all possible circumstances. *See id*. We overrule appellant's fourth issue.

### C. The sheriff's fee is constitutional.

In his fifth and final issue, appellant also challenges the "summoning witness/mileage" sheriff's fee "to the extent that it allocates funds to the county's general fund" as an impermissible tax collected by the judiciary that is not expended for a legitimate criminal justice purpose.[7] Article 102.011 imposes a $5 fee on a defendant convicted of a misdemeanor "for summoning a witness" and 29 cents per mile "for mileage required of an officer to perform a service listed in this subsection and to return from performing that service." Tex. Code Crim. Proc. § 102.011(a)-(b). The State argues article 102.011 is constitutional because it directs the funds to be expended for the legitimate criminal justice purpose of recouping "expenses associated with the services provided by peace officers in

---

[6] Amounts in the fund may not be transferred from the payment of claims registered in that fund unless there is an excess amount in that class. *Johnson*, 2018 WL 4925456, at *7 (citing Tex. Loc. Gov't Code § 113.004(d)).

[7] Appellant argues the fee goes to the general fund of the county and can be used for any purpose, unless the service is provided by a peace officer employed by the State of Texas, in which case 20% of the money is sent to the State for deposit in the State's General Revenue Fund (in this case, that would be $3). Appellant cites a 2014 report of the Texas Office of Court Administration to support his argument.

relation to a defendant's criminal trial."[8] We agree.

Appellant relies on our sister court's opinion in *Hernandez v. State*, No. 01-16-00755-CR, 2017 WL 3429414 (Tex. App.—Houston [1st Dist.] Aug. 10, 2017, no pet.), in which the court held that under *Salinas*, a statute imposing a district attorney's fee was unconstitutional "to the extent that it allocates funds to the county's general fund because those funds allow spending for purposes other than legitimate criminal justice purposes." *Id*. at *7 (citing *Salinas*, 523 S.W.3d at 109 n.26). However, the holding in *Salinas* does not render every court cost that goes into a general fund unconstitutional.

In *Salinas*, the defendant challenged the assessment of court costs in a consolidated fee on the basis that certain government accounts to which some of the funds were directed—for abused children's counseling and comprehensive rehabilitation—"were not sufficiently related to the court system to be valid recipients of money collected as court costs." 523 S.W.3d at 105-06. The court addressed "whether the two accounts at issue [met] the requirement that the relevant statutes provide for an allocation of funds 'to be expended for legitimate criminal justice purposes.'" *Id*. at 107. As to the comprehensive rehabilitation account, in concluding that the statute at issue was unconstitutional "to the extent it allocate[d] funds to" that account, the court noted that the statute, on its face, did not appear to serve a legitimate criminal justice purpose because the statute did not articulate how the funds would be used for "anything relating to criminal justice." *Id*. at 108-09. As to the abused children's counseling account, the court noted that the program benefitting abused children, to which the funds were directed in the statute, "no longer exists and the funds revert to the General Revenue Fund." *Id*. at

---

[8] The State also suggests that interconnected statutes allocate the witness summoning fees to a specific fund for a specific purpose, weaving a complicated path from a Texas Constitutional mandate to several sections of the Local Government Code for the placement of funds.

13

109. Accordingly, the State did not establish that those funds were to be "expended for legitimate criminal justice purposes." *Id*. *Salinas* does not support the broad proposition that *every* court cost that is deposited into a general fund is unconstitutional. *See Allen*, 2018 WL 4138965, at *7 (citing *Salinas*, 523 S.W.3d at 109 n.26).

In *Peraza*, the Court of Criminal appeals noted that court costs are "intended by the Legislature" to allow for a "recoupment of the costs of judicial resources expended in connection with the trial of the case," 467 S.W.3d at 517 (citing *Weir v. State*, 278 S.W.3d 364, 366 (Tex. Crim. App. 2009), and it held that permissible "court costs should be related to the recoupment of costs of judicial resources." *Id*. That language controls our analysis.

We conclude the tracing of accounts through various statutes is unnecessary for costs that are "related to the recoupment of costs of judicial resources." *See id*. Here, the statute explicitly directs the payment of the sheriff's fee "for services performed" in connection with the recoupment of costs of judicial resources, specifically, the costs of summoning witnesses for criminal trials. *See* Tex. Code Crim. Proc. § 102.011(a)-(b). Because the sheriff's fee is an actual recoupment of the out of pocket expenses incurred for summoning witnesses and for associated mileage, we conclude that appellant has not met his burden to show that the sheriff's fees collected under the statute cannot be used for legitimate criminal justice purposes in all possible circumstances.[9] We overrule appellant's fifth issue.

---

[9] Our sister court similarly concluded that a "summoning witness/mileage fee" assessed under article 102.011 was used to recoup out of pocket expenses incurred in the prosecution of the convicted defendant who was assessed the fee being challenged and thus the fee was "unquestionably for a legitimate justice purpose." *Allen*, 2018 WL 4138965, at *8-9.

14

### *Conclusion*

Concluding that the evidence was legally sufficient to support appellant's conviction, appellant did not prove he was egregiously harmed by the trial court's failure to limit the definition of "knowingly" in the jury charge, and the court costs assessed against appellant are constitutional, we affirm.


/s/    Martha Hill Jamison
Justice


Panel consists of Chief Justice Frost and Justices Christopher and Jamison (Frost, C.J., concurring and dissenting).
Publish—TEX. R. APP. P. 47.2(b).