**Affirmed and Majority and Concurring and Dissenting Opinions filed December 20, 2018.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-17-00205-CR

_____

**BELISARIO I. LOPEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1466251**

## M A J O R I T Y   O P I N I O N

Appellant Belisario I. Lopez challenges his capital murder conviction and the assessment of certain court costs against him. Concluding that the evidence is legally sufficient to corroborate accomplice witness testimony, counsel was not ineffective for failing to object during the State's closing argument, and the court costs assessed against appellant are constitutional, we affirm.

## Background

Three armed men—Jose Rivera ("Capo"), Fernan Santiago Vargas ("Bulto"), and Johnny Enamorado—entered the 45 Smoke Shop. Each carried a loaded weapon. Their plan was to steal drugs and money that Capo believed the shop owner kept at the store.

The men left the store without any drugs. But Bulto came out with an additional gun stolen from the store owner, and Enamorado came out with a gunshot wound to his leg that continued to bleed as he entered the getaway car—a blue Hyundai. The store owner was shot five times and died.

Video evidence shows the three men walk into the store with guns. Enamorado testified that appellant cased out the 45 Smoke Shop before the robbery, planned the heist with Capo, and acted as the getaway driver.

Cell phone records show that appellant was at or near the 45 Smoke Shop a week before the murder and that he communicated with Capo many times that day. Similar cell phone record evidence shows appellant's whereabouts the day of the murder. Appellant admitted he had a business relationship with Capo and sold the Hyundai to Bulto.

At trial, appellant presented an alibi that he was with his wife Jeydee Gomez on the day he was allegedly "casing" the 45 Smoke Shop and that he was with his friend Crandall "Troy" Jones, who wanted to borrow his car, on the night of the murder. Gomez and Jones testified that appellant was with them on the respective nights.

During closing arguments, the State attacked the credibility of appellant's alibi and made several statements suggesting that appellant or his counsel or both had asked Gomez and Jones to lie. During closing argument, the State argued: "[A]s I'm sure you've suspected, you've . . . been lied to today. Let's talk about Jeydee

Gomez, who of her own volition or of being asked by the defendant, she got on that stand and she lied to you."

Later, during the rebuttal portion of the State's closing argument, the prosecutor argued:

> Belisario's credibility. You know, it's a good story that these individuals decide to frame him because they owed him a thousand dollars. But the problem is Belisario and Jeydee and Troy tried just too hard to explain everything. Right? They needed to explain the calls on the 3rd so they put up Jeydee. Let's be truthful here. The 3rd doesn't really matter. I mean, it doesn't. No offense happened on the 3rd. There's communication on the 3rd but no offense happened on the [3]rd. Why put Jeydee up there to lie?

At the end of the rebuttal portion of the State's closing argument, the State argued:

> And ladies and gentlemen of the jury, I submit to you beyond a reasonable doubt that the reason he lied is because he knows he's guilty. Because he doesn't want to go to prison. And the best way to avoid that is to take the stand and lie and ask your wife to lie and ask Troy who works for you and depends on you for a living to lie. And that's what he did. And now that you see hard evidence of that lie, you should be disgusted with him. Disgusted that he would take the stand and take that oath and flat out lie. Regardless of trying to save himself, flat out lie under oath. It's ridiculous, and you all should feel the same disgust that I feel for that.

Appellant's trial counsel did not object to these statements, ask the trial court to instruct the jury to disregard them, or move for a mistrial. The jury found appellant guilty. Appellant received a mandatory sentence of life imprisonment without the possibility of parole.

### *Discussion*

### I. **The evidence is legally sufficient to corroborate accomplice witness testimony.**

In his first issue, appellant challenges the legal sufficiency of the evidence to corroborate the testimony of accomplice witness Enamorado. A conviction obtained

in reliance upon accomplice testimony must be supported by sufficient corroborating evidence tending to connect the defendant to the offense committed. Tex. Code Crim. Proc. art. 38.14; *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). When reviewing the sufficiency of the evidence to corroborate accomplice testimony, we eliminate the accomplice testimony and then examine the remaining portions of the record to see if there is any evidence that tends to connect the defendant with the commission of the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008); *Smith v. State*, 436 S.W.3d 353, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The corroborating evidence need not, standing alone, rise to the level of proof beyond a reasonable doubt. *Malone*, 253 S.W.3d at 257; *Smith*, 436 S.W.3d at 369. Instead, the evidence simply must link the defendant to the commission of the offense and show that rational jurors could conclude that the evidence sufficiently "tended to connect" the defendant to the offense. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009); *Smith*, 436 S.W.3d at 369. Accordingly, corroborative evidence need not be legally sufficient in itself to establish a defendant's guilt. *Casanova v. State*, 383 S.W.3d 530, 538 (Tex. Crim. App. 2012); *Smith*, 436 S.W.3d at 369.

Taken in isolation, suspicious circumstances such as the accused's presence at the scene of the crime, motive, or opportunity to commit the crime are not by themselves sufficient to corroborate the testimony of an accomplice witness. *Smith*, 436 S.W.3d at 369. But cumulative suspicious circumstances may tend to connect the accused to the charged offense, even if no circumstances are sufficient to do so individually. *Id*. Viewed collectively, even otherwise insignificant incriminating circumstances may tend to connect a defendant to a crime he is accused of committing. *Id*. Therefore, we "consider the combined force of all of the non-accomplice evidence that tends to connect the accused to the offense." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). We view the evidence in the light

most favorable to the jury's verdict. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008).

According to the indictment, appellant, while committing or attempting to commit robbery, intentionally caused the store owner's death by shooting him with a firearm. A person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery. Tex. Penal Code §§ 19.02(b), 19.03(a). A person may be convicted as a party to an offense if the offense is committed by the actor's own conduct, by the conduct of another for which the actor is criminally responsible, or both. *See id.* § 7.01(a).

The trial court instructed the jury on the law of parties and the law of conspiracy. *See id.* § 7.02. A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, the person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a). If, in the attempt to carry out a conspiracy to commit robbery, capital murder is committed by one of the conspirators, all conspirators are guilty of the capital murder actually committed, though having no intent to commit it, if the capital murder was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. *Id.* § 7.02(b).

In addition to Enamorado's accomplice witness testimony, the following evidence was adduced at trial:

- Appellant testified that he had a preexisting relationship with Capo and Bulto, employed Capo in connection with his renovation business, and sold Bulto the blue Hyundai. Appellant admitted he communicated with Capo on the phone a lot in January, before and after the crime, although appellant claimed that this communication was related to the sale of the car.

- Two police detectives (Condon and Powell) testified that appellant's

and Capo's phones were at or near the 45 Smoke Shop six days before the murder. This testimony was supported by phone mapping illustrations.

- Condon testified that cell phone record data shows appellant had a flurry of voice communications with Capo and exchanged four texts with Capo six days before the murder.

- Sergeant Rodriguez testified as to Gomez's text messages extracted from appellant's phone and translated from Spanish. The text messages conflicted with appellant's alibi as it related to his whereabouts six days before the murder. Specifically, Gomez's text messages to appellant during the timeframe that she stated she was with appellant were inconsistent with testimony that Gomez and appellant were together at that time and were inconsistent with the purported subject matter of their communications.

- Condon testified that cell phone record data showed appellant and Capo exchanged 25 voice calls on the day of the murder and a 1 minute, 39 second call from appellant to Capo at 8:49 p.m., which Condon testified "probably was the call right before they entered [the 45 Smoke Shop]." Condon also testified that appellant was in the general vicinity of the shop on that day.

- Powell testified that the cell phone record data, after application of Cell Hawk software, showed that (1) appellant's cell phone was at or near a gas station near the scene of the murder shortly before the time of the crime; and (2) appellant's cell phone was at or near the 45 Smoke Shop at the time of the murder.

- Officers testified as to discrepancies between the data extracted from appellant's cell phone and appellant's cell phone records, suggesting the deletion of the record of calls visible on his cell phone that were made during a four day period before, during, and after the murder.

- Cell phone records showed that appellant had communicated with Enamorado on two days during the week before the murder, contradicting appellant's testimony that he had not spoken to Enamorado.

Police officer testimony accordingly shows that appellant and Capo both were

near the 45 Smoke Shop at the same time, six days before the murder. The evidence also shows a high volume of calls between appellant and Capo that day, and again on the date of the murder, presenting strong circumstantial evidence linking appellant with the crime. *See Longoria v. State*, 154 S.W.3d 747, 758 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (finding that flurry of communications between defendant and perpetrators during course of robbery and immediately afterward presented strong circumstantial evidence that tended to connect defendant to the crime).

Although appellant presented alibi evidence to address the nature of his relationship with Capo and explain why he was in the vicinity of the crime in both instances, the jury had the freedom to measure the credibility of appellant's alibi by assessing the credibility of appellant and his witnesses. The jury heard evidence that contradicted appellant's alibi evidence. The State presented witnesses to demonstrate that appellant had deleted cell phone data from the relevant timeframe. Coupled with the evidence establishing appellant's location six days before the murder and on the day of the murder, evidence of appellant's targeted deletion of cell phone data tends to connect appellant to the murder.

The non-accomplice evidence shows appellant acted with Capo in preparing for the robbery and then took steps to conceal from investigators his communications with Capo and others. After eliminating the accomplice testimony from consideration and examining the remaining evidence, we conclude that the record contains evidence linking appellant to the murder and rational jurors could conclude that this evidence sufficiently tends to connect appellant to this offense. *See Cerna v. State*, 441 S.W.3d 860, 866 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Because we conclude non-accomplice evidence tends to connect appellant with the commission of the crime for which he was convicted, we overrule appellant's first issue.

## II. Trial counsel's failure to object to jury arguments was not ineffective assistance.

In his second issue, appellant asserts that his trial counsel rendered ineffective assistance by failing to object to statements by the State in closing arguments in which the State asserted that appellant had asked Gomez and Jones to lie and implied that appellant's counsel put Gomez on the witness stand to lie. To prevail on an ineffective-assistance claim, a defendant must prove that counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To defeat this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test—that trial counsel's representation fell below an objective standard of reasonableness—because the record on direct appeal is undeveloped. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect representation. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

It is not sufficient for the appellant to show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. *Mata*, 226 S.W.3d at 430. Rather, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant "must show that counsel's errors were so serious that he was not functioning as counsel." *Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995). We may not assume a lack of sound trial strategy on the part of trial counsel merely because we are unable to discern any particular strategic or tactical purpose in counsel's trial presentation. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002) ("A vague, inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent. . . . [A] defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission.").

Appellant contends that this is "not a case where this Court should rely upon a 'silent record' in denying Appellant's claim as no conceivable trial strategy would want the State to accuse their client and themselves of a potential crime." This argument lacks merit. First, the absence of an objection by appellant's trial counsel hardly equates to a desire by appellant's trial counsel for the prosecution to make the statements. And there is no indication that trial counsel desired or invited these accusations. Second, appellant cites no authority for the proposition that a failure by trial counsel to object to purported improper jury argument, standing alone, would be "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392. In fact, we have recognized that the failure to object to improper jury argument may be based on a reasonable trial strategy: to avoid drawing attention to the prosecutor's statement. *See Orellana v. State*, 489 S.W.3d 537, 550 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *see also Kuhn v. State*,

393 S.W.3d 519, 539 (Tex. App.—Austin 2013, pet. ref'd).

On these facts, we cannot conclude that trial counsel's failure to object to the statements was conduct so outrageous that no competent attorney would have engaged in it. *See Goodspeed*, 187 S.W.3d at 392–94; *see also Hebert v. State*, 489 S.W.3d 15, 22–24 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Therefore, appellant has not shown that his trial counsel rendered ineffective assistance. *See Goodspeed*, 187 S.W.3d at 392–94; *Hebert*, 489 S.W.3d at 22–24. We overrule appellant's second issue.

### III.   Challenged statutes imposing court costs are constitutional.

In his third and fourth issues, appellant challenges the constitutionality of statutes imposing court costs for jury's and sheriff's fees. Appellant did not object to the imposition of court costs in the trial court. The cost bill was generated the same day as the judgment, but it is not clearly incorporated into the judgment. The judgment includes a blank for "court costs," which states "$ as assessed."

Convicted defendants may object to the assessment of mandatory court costs against them for the first time on appeal when the judgment does not contain an itemization of the imposed court costs. *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016); *Bowden v. State*, 502 S.W.3d 913, 914 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). We presume that the challenged costs were "mandatory court costs" and thus preservation of these complaints was not required.

We review the constitutionality of a criminal statute de novo as a question of law. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it. *See Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *Eugene v. State*, 528 S.W.3d 245, 249 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Gov't Code

10

§ 311.021 (requiring courts to presume that "compliance" with Texas and United States Constitutions was intended). We must uphold the statute if we can apply a reasonable construction that will render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979). We make every reasonable presumption in favor of the statute's constitutionality unless the contrary is clearly shown. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). The party challenging the statute has the burden to establish its unconstitutionality. *Id*.; *Rodriguez*, 93 S.W.3d at 69.

Appellant has made a facial challenge to the constitutionality of the statutes in question. A facial challenge is an attack on a statute itself as opposed to a particular application. *Peraza*, 467 S.W.3d at 514. In such a challenge, the challenger must establish that "no set of circumstances exists under which the statute would be valid." *Id*.; *see also State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013) (holding party asserting a facial challenge "must establish that the statute always operates unconstitutionally in all possible circumstances."). Because a facial challenge attacks a statute's validity in all circumstances, it is "the most difficult challenge to mount successfully." *See Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

In analyzing facial challenges to court costs, we consider only applications of a statute that it authorizes or prohibits. *See Peraza*, 467 S.W.3d at 515. We do not evaluate the facial constitutionality of a court cost by theorizing where the funds collected and distributed might be spent. *See id*.

Appellant claims the fees at issue violate the separation of powers provision of the Texas Constitution. The Texas Constitution expressly guarantees the separation of powers among the three branches of government. Tex. Const. art. II, § 1; *Salinas v. State*, 523 S.W.3d 103, 106 (Tex. Crim. App. 2017). Article II, section

1 of the Texas Constitution states the following:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Tex. Const. art. II, § 1.

This section ensures that the powers granted to one governmental branch may be exercised only by that branch, to the exclusion of the other branches. *Ex parte Lo*, 424 S.W.3d at 28. When one branch of government assumes or is delegated a power more properly attached to another branch, that assumption or delegation of power violates the separation of powers provision. *Salinas*, 523 S.W.3d at 106-07. If a statute turns the courts into tax gatherers, then the statute delegates to the courts a power more properly attached to the executive branch; however, the collection of fees in criminal cases is a part of the judicial function if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes. *See id.* at 106-07 (holding that consolidated fee statute was unconstitutional as to state government accounts for "counseling abused children" and "comprehensive rehabilitation"). In other words, a reviewing court must determine whether the fee is a disguised tax on a criminal defendant (which is unconstitutional) or a fee for a legitimate criminal justice purpose (which is constitutional). *Allen v. State*, No. 01-16-00768-CR, 2018 WL 4138965, at *6 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, pet. granted).

The earliest statement by the Court of Criminal Appeals on the constitutionality of court costs disallowed a library fee because it was neither necessary nor incidental to the trial of a criminal case. *Ex parte Carson*, 143 Tex.

Crim. 498, 506, 159 S.W.2d 126, 130 (1942). The high court later modified the *Carson* test, rejecting the requirement under *Carson* that "to pass constitutional muster, the statutorily prescribed court cost *must* be 'necessary' or 'incidental' to the 'trial of a criminal case.'" *Peraza*, 467 S.W.3d at 517 (emphasis added). The court stated that court costs should be related to the recoupment of costs of judicial resources, but it found the terms "necessary or incidental" too limiting. *Id.* The court did not say that necessary or incidental costs were unconstitutional, however. Court costs that satisfy *Carson* continue to be constitutional.

Our legislature has developed statutorily prescribed court costs with the intention of reimbursing the judicial system for costs incurred in the administration of the criminal justice system. *Id*. Although not necessary to or an incidental expense of the actual trial of a criminal case, the costs may nevertheless be directly related to the recoupment of costs of judicial resources expended in connection with the prosecution of criminal cases within our criminal justice system. *See id.*

In addition, if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application and does not violate the separation of powers provision. *Id*. (tracing allocation of funds collected as costs for DNA testing); *see also Johnson v. State*, No. 14-16-00658-CR, 2018 WL 4925456, at *5 (Tex. App.—Houston [14th Dist.] Oct. 11, 2018, no pet. h.). A "criminal justice purpose" is one that "relates to the administration of our criminal justice system" and should be evaluated on a statute-by-statute/case-by-case basis. *Peraza*, 467 S.W.3d at 517-18; *Johnson*, 2018 WL 4925456, at *5.

With this framework in mind, we address each challenged statute in turn. Appellant argues only that the costs at issue violate the separation of powers provision because they are allocated into the county's general fund and "are not used

13

for a criminal justice purpose."

## A. The jury's fee is constitutional.

In his third issue, appellant challenges the jury's fee as an impermissible tax collected by the judiciary that is not expended for a legitimate criminal justice purpose. Article 102.004(a) imposes a $40 fee on a defendant convicted by a jury in a district court, as here. Tex. Code Crim. Proc. art. 102.004(a). Appellant argues the fee is unconstitutional because it is directed to the county's general fund.

Another panel of this court recently overruled a facial constitutional challenge to article 102.004(a). *Johnson*, 2018 WL 4925456, at *7-8. We held that although article 102.004(a) does not allocate the jury's fee to any specific fund or direct how the funds collected are to be expended, section 113.004 of the Local Government Code does. *Id*. at *7. Section 113.004 requires the $40 jury's fee to be deposited into a fund designated for jury's fees, among other things, and used for the payment of claims registered in the class of claims corresponding to that fund.[1] *Id*. We concluded that section 113.004 not only allows but mandates that jury's fees collected under article 102.004 be used for legitimate criminal justice purposes. *Id*.

Consistent with our opinion in *Johnson*, we conclude that appellant has not met his burden to show that the jury's fees collected under the statute cannot be used for legitimate criminal justice purposes in all possible circumstances. *See id*. We overrule appellant's third issue.

## B. The sheriff's fee is constitutional.

In his fourth issue, appellant challenges the "summoning witness/mileage" sheriff's fee as an impermissible tax collected by the judiciary that is not expended for a legitimate criminal justice purpose. Article 102.011 imposes a $5 fee on a

---

[1] Amounts in the fund may not be transferred from the payment of claims registered in that fund unless there is an excess amount in that class. *Johnson*, 2018 WL 4925456, at *7 (citing Tex. Loc. Gov't Code § 113.004(d)).

defendant convicted of a felony "for summoning a witness" and 29 cents per mile "for mileage required of an officer to perform a service listed in this subsection and to return from performing that service." Tex. Code Crim. Proc. art. 102.011(a)-(b). The State argues article 102.011 is constitutional because it directs the funds to be expended for the legitimate criminal justice purpose of "reimbursement of the peace officer who performed the service of summoning a witness in the case." We agree.

Appellant relies on our sister court's opinion in *Hernandez v. State*, No. 01-16-00755-CR, 2017 WL 3429414 (Tex. App.—Houston [1st Dist.] Aug. 10, 2017, no pet.), in which the court held that under *Salinas*, a statute imposing a district attorney's fee was unconstitutional "to the extent that it allocates funds to the county's general fund because those funds allow spending for purposes other than legitimate criminal justice purposes." *Id*. at *7 (citing *Salinas*, 523 S.W.3d at 109 n.26). However, the holding in *Salinas* does not render every court cost that goes into a general fund unconstitutional.

In *Salinas*, the defendant challenged the assessment of court costs in a consolidated fee on the basis that certain government accounts to which some of the funds were directed—for abused children's counseling and comprehensive rehabilitation—"were not sufficiently related to the court system to be valid recipients of money collected as court costs." 523 S.W.3d at 105-06. The court addressed "whether the two accounts at issue [met] the requirement that the relevant statutes provide for an allocation of funds 'to be expended for legitimate criminal justice purposes.'" *Id*. at 107. As to the comprehensive rehabilitation account, in concluding that the statute at issue was unconstitutional "to the extent it allocate[d] funds to" that account, the court noted that the statute, on its face, did not appear to serve a legitimate criminal justice purpose because the statute did not articulate how the funds would be used for "anything relating to criminal justice." *Id*. at 108-09. As to the abused children's counseling account, the court noted that the program

15

benefitting abused children, to which the funds were directed in the statute, "no longer exists and the funds revert to the General Revenue Fund." *Id*. at 109. Accordingly, the State did not establish that those funds were to be "expended for legitimate criminal justice purposes." *Id. Salinas* does not support the broad proposition that *every* court cost that is deposited into a general fund is unconstitutional. *See Allen*, 2018 WL 4138965, at *7 (citing *Salinas*, 523 S.W.3d at 109 n.26).

In *Peraza*, the Court of Criminal appeals noted that court costs are "intended by the Legislature" to allow for a "recoupment of the costs of judicial resources expended in connection with the trial of the case," 467 S.W.3d at 517 (citing *Weir v. State*, 278 S.W.3d 364, 366 (Tex. Crim. App. 2009), and it held that permissible "court costs should be related to the recoupment of costs of judicial resources." *Id*. That language controls our analysis.

Here, the statute explicitly directs the payment of the sheriff's fee "for services performed" in connection with the recoupment of costs of judicial resources, specifically, the costs of summoning witnesses for criminal trials. *See* Tex. Code Crim. Proc. § 102.011(a)-(b). Because the sheriff's fee is an actual recoupment of the out of pocket expenses incurred for summoning witnesses and for associated mileage, we conclude that appellant has not met his burden to show that the sheriff's fees collected under the statute cannot be used for legitimate criminal justice purposes in all possible circumstances.[2] We overrule appellant's fourth issue.

---

[2] Our sister court similarly concluded that a "summoning witness/mileage fee" assessed under article 102.011 was used to recoup out of pocket expenses incurred in the prosecution of the convicted defendant who was assessed the fee being challenged and thus the fee was "unquestionably for a legitimate justice purpose." *Allen*, 2018 WL 4138965, at *8-9.

### *Conclusion*

Concluding that the evidence is legally sufficient to satisfy the accomplice witness rule, appellant has not shown that his trial counsel's failure to object to the prosecutor's statements during closing arguments constitutes ineffective assistance of counsel, and the court costs assessed against appellant are constitutional, we affirm.


/s/     Martha Hill Jamison
           Justice


Panel consists of Chief Justice Frost and Justices Christopher and Jamison. (Frost, C.J., dissenting.)

Publish — Tex. R. App. P. 47.2(b).